

# In the Missouri Court of Appeals

## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| BV CAPITAL, LLC, | ) | No. ED102521 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Steven H. Goldman |
| LARRY HUGHES, | ) | |
| | ) | |
| Appellant, | ) | |
| and | ) | |
| | ) | |
| THIRD STREET INVESTORS, et al., | ) | Filed: |
| | ) | September 15, 2015 |
| Defendants. | ) | |

Larry Hughes appeals from the trial court's grant of summary judgment against him and in favor of BV Capital. We reverse and remand.

In 2006, Hughes, Darius Miles, Carrie Dunne, Marshall Faulk, Cornell Haynes, II, and Scott Rosenblum formed Third Street Investors, LLC ("TSI") to acquire and redevelop real property located at 800-814 North Third Street, St. Louis, MO 63102 ("the Property"). TSI was owned by Hughes, Miles, and North Meramec Investors, LLC ("NMI"). NMI was owned by Faulk, Haynes, Rosenblum, and Dunne.

Truman Bank made a loan to TSI in relation to the Property. In return, TSI executed a promissory note payable to Truman Bank in the original principal amount of $2,082,500.00. To secure full and prompt repayment of the promissory note, TSI executed and delivered to Truman

Bank, as grantee, and Trucorp, Inc., as trustee, a deed of trust with future advances and future obligations on the Property owned by TSI. In addition, Dunne, Faulk, Haynes, Miles, and Rosenblum executed guaranties to be personally liable for certain percentages of the debt in the event there was a default on the promissory note. Hughes also executed a guaranty to be liable for 20% of the loan. This guaranty and the circumstances surrounding it are the subject of this appeal.

TSI opened and operated the Skybox Restaurant on the Property from 2008 until 2010. The payments on the note were often late, real estate taxes became delinquent, and the restaurant failed. On September 16, 2001, the promissory note, as modified by the seven modifications, matured and became due and payable by TSI to Truman Bank.

As of January 13, 2012, the amount due was $2,089,682.19, which included principal, interest, late charges, and a release charge. On January 20, 2012, Truman Bank notified TSI and the guarantors, not including Hughes, of the maturity of the promissory note and demanded payment, but payment was not made.

Truman Bank filed a petition against TSI and the guarantors, not including Hughes, for failing to pay sums due on the promissory note and for breaching their guaranties. Truman Bank also sought the appointment of a receiver to take possession and control of the Property until a foreclosure sale.

Truman Bank failed on September 14, 2012, and the Federal Deposit Insurance Corporation took over as receiver. On December 19, 2012, the promissory note and other loan documents were negotiated to Simmons First National Bank ("Simmons"), and Simmons was substituted for Truman Bank as the plaintiff. Simmons decided to sell the loan, and Hughes made an offer of $500,000.00 to buy it. However, BV Capital made a better offer and on May

2

17, 2003, the promissory note and other loan documents were negotiated and transferred to BV Capital, and BV Capital became the plaintiff instead of Simmons. BV Capital subsequently sold the Property for $500,000.00, which partially reduced the debt.

BV Capital amended its petition to include Hughes as a defendant based on his guaranty. BV Capital then filed a motion for summary judgment against TSI, Dunne, Faulk, Haynes, Miles, Rosenblum, and Hughes.[1]

Hughes filed a motion in opposition to BV Capital's motion for summary judgment, in which he claimed there were several genuine issues of material fact and, as a result, BV Capital was not entitled to summary judgment.

On October 29, 2013, the trial court entered its judgment granting BV Capital's motion for summary judgment as to TSI and Haynes, who failed to file a response to BV Capital's motion and failed to deny any of the uncontroverted facts alleged by BV Capital. The trial court's judgment ordered TSI to pay $2,554,595.70 plus attorneys' fees and Haynes to pay $510,919.14 plus costs and attorneys' fees.

On March 5, 2014, the trial court entered its judgment granting BV Capital's motion for summary judgment with respect to Hughes. The trial court ordered Hughes to pay a total of $586,119.90 to BV Capital. The trial court subsequently dismissed Faulk from the lawsuit with prejudice. BV Capital also dismissed Miles, on whom it never established service of process, from the suit without prejudice.

Hughes appeals from the trial court's grant of summary judgment against him, and the only issue on appeal is the grant of summary judgment the trial court entered against Hughes.

Our review of summary judgment is de novo. Jefferson ex rel. Jefferson v. Missouri Baptist Medical Center, 447 S.W.3d 701, 705 (Mo. App. E.D. 2014). The criteria on appeal for

---

[1] BV Capital later settled out of court with Rosenblum and Dunne.

testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, without deference to the trial court's findings, and accord the non-movant the benefit of all reasonable inferences from the record. Jefferson ex rel. Jefferson, 447 S.W.3d at 705. Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Id. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. Id.

In his first point, Hughes argues the trial court erred in considering Exhibit P. We disagree.

Only evidence that is admissible at trial can be used to sustain or avoid summary judgment. Weltmer v. Signature Health Services Inc., 417 S.W.3d 856, 863 (Mo. App. E.D. 2014). To be admissible as evidence, a document must meet a number of foundational requirements, including relevancy, authentication, the best evidence rule, and hearsay. Id. A trial court has considerable discretion in deciding whether to admit or exclude evidence. Bowolak v. Mercy East Communities, 452 S.W.3d 688, 699 (Mo. App. E.D. 2014). We defer to the trial court's evidentiary rulings and will reverse only if the court clearly abused its discretion. Id. Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission or exclusion of evidence is outcome-determinative. Id.

Exhibit P is Hughes' guaranty to be personally liable for 20% of the debt on the promissory note. Hughes alleges Truman Bank did not possess his signed guaranty when it

4

made the initial loan. Further, Hughes contends Truman Bank did not possess his signed guaranty when it modified the loan seven times. Hughes maintains his guaranty was a business record, but it was not admissible because it was not properly authenticated as a business record, and, as a result, it was inadmissible hearsay.

We find the trial court did not abuse its discretion in considering Exhibit P in the context of its grant of summary judgment. Exhibit P's authenticity is not being questioned. Hughes admits the guaranty contains his signature. Hughes only denies that the guaranty was executed in connection with TSI's note to Truman Bank. Hughes also denies the guaranty was part of Truman Bank's TSI loan file. These matters are peripheral to the authenticity of Exhibit P and can be determined by other evidence regarding Exhibit P's origin and effect. Therefore, we find the trial court did not err in considering Exhibit P. Point denied.

We will next address Hughes third point on appeal because of its dispositive nature. In his third point, Hughes argues the trial court erred in granting summary judgment in favor of BV Capital because BV Capital failed to prove its prima facie case for breach of guaranty against Hughes as Hughes's guaranty was not delivered to Truman Bank and Hughes's guaranty was not relied upon by Truman Bank in extending credit to TSI. Alternatively, Hughes contends whether his guaranty was delivered to Truman Bank and whether it was relied upon by Truman Bank in extending credit to TSI are issues of fact that must be determined by a trier of fact.

A guaranty is a contract in which a guarantor agrees to become secondarily liable for the obligation of a debtor in the event the debtor does not perform the primary obligation. Capitol Group, Inc. v. Collier, 365 S.W.3d 644, 648 (Mo. App. E.D. 2012). The rules governing construction of contracts generally apply to the construction of a guaranty. Id. However, the

5

liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation. Id.

To make a prima facie claim for a breach of contract claim involving a guaranty, a creditor must show: (1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover. ITT Commercial Fin. Corp., 854 S.W.2d at 382.

As noted previously, there seems to be no question that Hughes executed the guaranty and that there is currently due and owing a sum of money that the guaranty purports to cover. Thus, the first and fourth elements were satisfied. However, the second and third elements are matters of disputed fact, which precludes a grant of summary judgment. In its memorandum of law supporting its motion for summary judgment, BV Capital actually states "the second and third of these elements may be at issue with respect to Hughes's liability under his guaranty in this case." However, contrary to its statement quoted above, BV Capital goes on to contend Hughes's guaranty was delivered to Truman Bank, which relied on the guaranty in extending credit to TSI.

There is a presumption that a letter duly mailed has been received by the addressee. Insurance Placements, Inc. v. Utica Mut. Ins. Co., 917 S.W.2d 592, 595 (Mo. App. E.D. 1996). The presumption is rebuttable, and when proof of proper mailing is adduced, it may be rebutted by evidence it was not, in fact, received. Id. Evidence of non-receipt, however, does not nullify the presumption but leaves the question for the determination of the jury under all of the facts and circumstances of the case. Id.

6

Thus, the issue is whether the record is sufficient to support a finding that Hughes's guaranty was, in fact, mailed, thus triggering the presumption that it was received by Truman Bank. Then we must determine whether that presumption was rebutted by Truman Bank. If so, summary judgment is not proper, and the issue must go to a jury.

In its statement of uncontroverted material facts, BV Capital asserted Hughes's guaranty in favor of Truman Bank and its successors and assigns dated November 16, 2006 was delivered to Truman Bank in February of 2007. In support of this assertion, BV Capital points to a February 14, 2007 letter from John King, Hughes's attorney, to Truman Bank, which purportedly included Hughes's guaranty as an enclosure. BV Capital also asserts business records from King's law firm show payment to a courier who delivered the February 14, 2007 letter. Moreover, the courier's records show it delivered the letter to Truman Bank on February 14, 2007.

The legal file does contain a February 14, 2007 letter from King to Truman Bank, which included Hughes's guaranty as an enclosure. However, in Exhibit I, King testified he did not recall if Hughes's guaranty was delivered to Truman Bank by a courier on February 14, 2007. Further, Truman Bank has no record of the letter, and there is no evidence of Truman Bank acknowledging delivery in the record. Michael Gaia, the Vice President of Commercial Lending at Truman Bank from 2006 to 2008, testified that he handled the TSI loan, but that he could not locate a guaranty by Hughes. Gaia also testified he did not receive the February 14, 2007 letter. There is also evidence in the record that Truman Bank still did not have the guaranty on March 26, 2008. In addition, Truman Bank renewed and modified the loan to TSI on seven different occasions, each time noting it still needed Hughes's guaranty. We also note Truman Bank never filed suit against Hughes on his purported guaranty, implying it never received the guaranty.

7

Further, neither Truman Bank nor Simmons Bank purported to convey Hughes's guaranty, which also implied they did not have it to convey.

Based on the above evidence, we find there is a dispute of fact regarding whether Hughes's guaranty was delivered to Truman Bank on February 14, 2007. As noted above, BV Capital presents sufficient evidence to support its assertion that Hughes's guaranty was mailed to Truman Bank. As a result, there is a presumption that it was delivered to Truman Bank. However, that presumption was rebutted by the substantial evidence indicating it was not received by Truman Bank. Therefore, a jury must decide this issue after hearing all of the facts and circumstances of the case.

In addition, we note there is also an issue of material fact regarding the third element, that is, whether Truman Bank relied on Hughes's guaranty in extending a loan to TSI. In his affidavit, to explain why he made the loan, Gaia stated:

> As an inducement to make the loan to [TSI], [Truman Bank] and I relied on [Hughes's] participation as a guarantor for this loan to the extent of 20% even though we [] could not locate an executed guaranty. I have reviewed an executed Hughes guarant[y] dated the same date of the loan with a cover letter from [King] showing delivery to Truman Bank on February 14, 2007. We were repeatedly advised by [Hughes's] partners that execution by [Hughes] of a guaranty would not be an issue.

However, when Gaia was asked during his deposition how he relied on Hughes's guaranty in extending the loan when he did not possess Hughes's guaranty, Gaia responded:

> Well, my knowledge of the fact that he was a professional basketball player with a substantial salary. I remembered that information, so I continued to rely on that, plus the fact that his word was, in my opinion, something that he would not – you know, not stand behind in the event that we had a default. Plus the other partners all knew him, they knew each other, so I felt that they would pressure on him if – that was my own feeling. I had no proof of that, it was just what I thought. You know, push come to shove, they might feel as though he needs to ante up with his 20 percent because they're coming up with theirs.

8

Thus, Gaia's testimony demonstrates the existence of a disputed material fact because based on his testimony, it is unclear whether Truman Bank relied on Hughes's guaranty or other factors when it provided a loan to TSI.

As a result, we find there are genuine issues of material fact regarding whether the guaranty was delivered to Truman Bank and whether Truman Bank relied on the guaranty in providing the loan to TSI. A jury must determine these issues. Thus, the trial court erred in granting summary judgment in favor of BV Capital. Point granted.

In his second point, Hughes argues the trial court erred in holding BV Capital proved its standing to enforce Exhibit P against Hughes.

The issue of standing is a threshold question in that a party cannot obtain relief from a court if that party lacks standing. In Matter of Adoption of C.T.P., 452 S.W.3d 705, 713 (Mo. App. W.D. 2014). We review a trial court's determination that a party lacks standing de novo. Id. We determine whether a person has standing from a review of the allegations in the pleadings along with any other undisputed facts revealed by the record. Id.

Here, we are dealing with the standing of BV Capital. However, we can only answer the question of standing for the successor in interest, BV Capital, after we have determined whether Hughes's guaranty was delivered to and relied upon by Truman Bank, the originator of the loan. If the guaranty was not delivered to or relied upon by Truman Bank, then it could not enforce the guaranty against Hughes. As a result, the successors in interest also could not enforce the guaranty. On the other hand, if it was delivered to or relied upon by Truman Bank, it is possible that BV Capital could enforce the guaranty against Hughes. However, because we found in BV Capital's second point that there were genuine issues of material fact regarding whether Exhibit P was delivered to Truman Bank and whether Truman Bank relied on Hughes's guaranty in

9

granting the loan to TSI, we are not able to address whether BV Capital had standing to enforce the guaranty against Hughes until determinations on those two issues of fact are made. Therefore, we need not address BV Capital's second point.

The judgment of the trial court is reversed and remanded.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.