

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| JOANNE JONES, QUINCY DWAYNE JONES, CHRIS JONES, and ANTHONY JONES, | ) ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No. SD34184 |
| UNION PACIFIC RAILROAD COMPANY, | ) ) | FILED: October 18, 2016 |
| Respondent. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Judge

### REVERSED AND REMANDED

Arnold Jones died in 2010 when a train hit his pickup at a rural crossing in Butler County. Appellants ("Plaintiffs") sued Respondent ("Railroad") for wrongful death, alleging that the crossing was ultrahazardous and the crossing warnings were inadequate. Railroad raised the affirmative defense of federal preemption, which required proof that the crossing had been improved with federal funds, and later obtained summary judgment on that basis.

On appeal, Plaintiffs concede that federal funding equals preemption, but urge

that the summary judgment record does not prove federal spending at this crossing.[1]

We agree, and thus reverse and remand for further proceedings.

## Key Summary Judgment Principles

"Our review is *de novo* using the same criteria the trial court should have employed without deference to that court's decision." ***Lackey v. Iberia R-V School Dist.***, 487 S.W.3d 57, 58 (Mo.App. 2016)(citing ***ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993)).

What compels reversal here is so often overlooked, even by lawyers and trial judges as skilled as these, that we recently emphasized in ***Lackey***, 487 S.W.3d at 60-62, and again reemphasize that:

- Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework.[2]

- Courts determine and review summary judgment *based on that Rule 74.04(c) record, not* the whole trial court record.[3]

- Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or

---

[1] To quote Plaintiffs' brief in this court:

> As to railroad crossings, inadequate warning claims are preempted by federal law where federally prescribed and federally funded warning devices are actually installed and operating at a crossing. [citations omitted] Preemption thus results when defendant proves that federal monies participated in the installation of reflectorized crossbucks. [citation omitted] For the same reason, ultrahazardous crossing claims based upon inadequate warning devices are also preempted when the federal government pays for them. [citation omitted]
>
> Plaintiffs do not dispute that rule of law controls both their inadequate warning and ultrahazardous crossing claims. They dispute that [Railroad] proved the facts necessary to establish its preemption defense in accordance with Supreme Court Rule 74.04.

[2] *Id.* at 61-62 & n.4. Rule references are to Missouri Court Rules (2014).

[3] ***Lackey***, 487 S.W.3d at 61 & n.3.

2

responses,[4] *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.*[5]

- To come full circle, "summary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*"[6]

## Application and Resulting Issue

Railroad won on an affirmative defense (federal preemption), so we can affirm only if the parties' Rule 74.04(c) numbered paragraphs and responses establish that defense's only disputed element (federal funds spent on crossing). *See Lackey*, 487 S.W.3d at 61. Thus we review de novo a narrow issue that was Railroad's burden to prove: do Rule 74.04(c) paragraphs and responses prove such spending beyond genuine dispute?

### O'Bannon

Railroad urges that its summary judgment victory on federal preemption in *O'Bannon v. Union Pacific RR.*, 169 F.3d 1088 (8th Cir. 1999), compels us to affirm. We disagree,[7] but will summarize *O'Bannon* because Railroad has used it as a template here.

In *O'Bannon*, Railroad established that a 1979 Missouri PSC order authorized

---

[4] *Custer v. Wal-Mart Stores E. I, LP*, 492 S.W.3d 212, 215 (Mo.App. 2016); *Lackey*, 487 S.W.3d at 62.

[5] *Shellabarger v. Shellabarger*, 317 S.W.3d 77, 84 (Mo.App. 2010). A party wishing to supplement its motion with new facts should withdraw its original motion and file a new, amended, or second motion based on an expanded record. *Id*.

[6] *Lackey*, 487 S.W.3d at 62.

[7] This may be the point to note Railroad's heavy reliance on federal summary judgment cases. "Because federal summary judgment serves a different purpose, it is difficult to view the federal cases construing the federal rule as 'particularly' persuasive any longer ... in the determination of [Missouri] summary judgment motions which are, by their very nature, susceptible primarily of a case-by-case analysis." *ITT*, 854 S.W.2d at 380.

the Highway Commission to contract with Railroad's predecessor Missouri Pacific to install two reflectorized crossbucks at each of the railroad's public crossings not already so equipped; the state to reimburse the railroad 90% of the cost with federal funds. Attached to the contract was a tabulation of Missouri crossings that included the "Sellers Road" crossing in Pettis County (later the accident site) and listed one crossbuck there. *Id*. at 1089.

In 1982, a Highway Commission employee recommended payment for 222 reflectorized crossbucks installed in his district, which included Pettis County, which would have entitled the railroad to $31,660 at the 90% rate. A year later, the state paid the railroad $34,488 "for the installation of crossbucks in Missouri." *Id*. Per Missouri records, the railroad was to install 1,300 crossbucks statewide. In 1982, the railroad reported that it had installed almost all of those. Were this true, the state should have paid the railroad some $175,700 in federal funds, but the only evidence of payment was the $34,488 received in 1983. *Id*. Despite the dollar-inconsistencies, the Eighth Circuit found that "[t]he inference is very strong that the installation at the Sellers Road crossing was paid for" (*id*. at 1090) and affirmed summary judgment. *Id*. at 1091.

Here, Railroad sought to replicate most of an *O'Bannon*-like summary judgment record – the 1979 PSC order and federally-funded crossbucks contract; a tabulation that included this Butler County crossing and listed one crossbuck there; Missouri Pacific's "third and final bill" of $39,252.60 for crossbucks in Butler and other counties; and Highway Department correspondence recommending payment of $24,488.

4

But in apparent contrast to ***O'Bannon***, Railroad did not directly assert as a material fact here that its bill was paid in whole or part, or that it received any money, federal or otherwise, much less the dispositive fact of federal funding at this specific crossing which arguably is the sole material fact for summary judgment. *See **Custer***, 492 S.W.3d at 215. In this and other respects, the summary judgment procedure below was hardly "by the book."

**Procedural Background of This Case**

As noted, Railroad's Rule 74.04(c)(1) statement of uncontradicted material facts ("SUMF") did not directly assert federal funding at this crossing, but proposed circumstantial proof purportedly supported by various documents attached as Exhibit 10 (34 pages) and Exhibit 12 (22 pages).[8]

Plaintiffs denied the SUMF because the supporting documents were unauthenticated hearsay. "Hearsay statements cannot be considered in ruling on the propriety of summary judgment." ***United Petroleum Serv., Inc. v. Piatchek***, 218 S.W.3d 477, 481 (Mo.App. 2007). "Only evidence that is admissible at trial can be used to sustain or avoid summary judgment." ***Id.***, *quoted in **Weltmer v. Signature Health Services Inc.***, 417 S.W.3d 856, 862-63 (Mo.App. 2014). Documents, to be admissible, must meet authentication and hearsay foundational requirements. ***Weltmer***, 417 S.W.3d at 863.

In its reply, Railroad repackaged and resubmitted 40 of its 56 prior "support"

---

[8] Unless the context indicates otherwise, we use "SUMF" to mean only Railroad's SUMF 65-83 relating to the federal funds/preemption issue on appeal. Given other failings addressed *infra*, we merely note that most of those paragraphs also suffered flaws similar to those analyzed in ***Custer***, 492 S.W.3d at 214-16.

pages as follows:

- Exhibit 16 – 16 pages plus a 2015 "Certification of Records" by Pamela J. Harlan, Secretary of the Highway Commission, stating that the attached 16 pages were a full, true, and complete copy of the 1979 PSC order "as the same appears of record in the office of the Commission."

- Exhibit 17 – 24 pages plus a 2001 "Certification" by Mari Ann Winters, (formerly) Secretary of the Highway Commission, stating that the attached "837 consecutively numbered pages" were "as the same appears of record in the office of the Commission."[9]

Plaintiffs deposed Ms. Harlan and Ms. Winters, then moved to strike the certifications and exhibits. In subsequent briefing, Railroad submitted an affidavit by James Hesse, a retired railroad attorney. Plaintiffs moved to strike Hesse's affidavit, obtained leave to depose Hesse and did so, and the deposition was emailed to the trial court at its request the Saturday before trial.

Throughout all this time, Railroad never sought to amend, supplement, or change its original SUMF other than repackaging and resubmitting Exhibits 16 & 17.

The Sunday before trial, the court ruled that "federal funds were expended on the crossbucks in question" and Plaintiffs' subject claims were preempted. After the court entered formal judgment accordingly, Plaintiffs voluntarily dismissed their remaining claims and filed this appeal.

## SUMF Cure Generally Ineffective

Railroad's reply resubmission of supporting pages as new Exhibits 16 & 17

---

[9] Rule 74.04 does not seem to contemplate such manner of cure. Rule 74.04(c)(3) authorizes a reply memorandum of law, admissions or denials of the non-movant's statement of additional material facts (if any), and a further statement of additional material facts by the movant. Exhibits 16 & 17 fit no such category; "[n]o other papers with respect to the motion for summary judgment shall be filed without leave of court" (Rule 74.04(c)(5)); and we cannot see where Railroad sought such leave.

6

generally failed to cure its SUMF's reliance on inadmissible hearsay or Plaintiffs' objections thereto.

*Exhibit 16*

Exhibit 16 establishes the 1979 PSC order and statewide contract cited in ***O'Bannon*** and the SUMF, but not that crossbucks were installed in Butler County. It *might* certify that Missouri Pacific's 1982 letter to the PSC on that issue can be found in Highway Commission records,[10] but the letter is hearsay.

Although our supreme court left open "the question of the proper scope of the common law public records exception" as to hearsay in ***Rodriguez v. Suzuki Motor Corp.***, 996 S.W.2d 47, 57 (Mo. banc 1999), we find guidance in that court's recent business records decision and cases cited therein:

> [A] document that is prepared by one business cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the record. *State v. Anderson,* 413 S.W.2d 161, 165 (Mo.1967); *Zundel v. Bommarito,* 778 S.W.2d 954, 958 (Mo.App.1989) ("The business records exception to the hearsay rule applies only to documents generated by the business itself.... Where the status of the evidence indicates it was prepared elsewhere and was merely received and held in a file but was not made in the ordinary course of the holder's business it is inadmissible and not within a business record exception to the hearsay rule under § 490.680, RSMo 1986.") A custodian of records cannot meet the requirements of § 490.680 by simply serving as "conduit to the flow of records" and not testifying to the mode of preparation of the records in question.

***CACH, LLC v. Askew***, 358 S.W.3d 58, 63 (Mo. banc 2012)(also citing ***C & W Asset Acquisition, LLC v. Somogyi***, 136 S.W.3d 134, 140 (Mo.App. 2004)); *see also*

---

[10] We must stretch to construe Missouri Pacific's *1982 letter* as fitting a Highway Commission certificate describing attached pages as a full, true, and complete copy of *the PSC's 1979 order*.

7

***Asset Acceptance v. Lodge***, 325 S.W.3d 525, 528-29 (Mo.App. 2010).[11]

*Exhibit 17*

As noted above, this exhibit's certification is facially irregular, dated in 2001 and purporting to certify 837 pages when only 24 pages are attached. At deposition, Ms. Winters testified that this "was not the original certification" she signed in 2001, and further admitted she could not even testify that its 24 pages were part of the 837 pages she had earlier certified. Thus we cannot consider either Exhibit 17 or SUMF 82 & 83, the latter dealing with crossbuck installation and relying on Exhibit 17 documents for support.

At best, therefore, the Rule 74.04 record establishes only a 1979 plan and contract to install, with federal funding, two reflectorized crossbucks at each of Railroad's Missouri crossings where such protection was not already in place. It does not establish whether any crossbucks were needed at this crossing, or were installed there or anywhere, or that any monies (federal or otherwise) were paid for work at this crossing or elsewhere. The Rule 74.04 record does not show beyond genuine dispute that federal funds were spent on this crossing. Railroad did not prove its right to judgment as a matter of law based on federal preemption.

**Other Railroad Arguments**

Railroad's assertions that Hesse's 11th-hour testimony independently supports

---

[11] We reject Railroad's arguments to admit the letter under RSMo § 386.290 (certain documents certified by authorized PSC representative under PSC seal) or § 490.460 (public contracts) because the letter is not a contract and is not certified or sealed by or on behalf of the PSC, but by and on behalf of the Highway Commission as *its* record. Moreover, these statutes merely make certified copies as admissible "as the originals," so Missouri Pacific's hearsay letter thus certified would remain hearsay.

a federal-funding finding expands its preemption argument "with additional facts not included in the record pursuant to Rule 74.04(c)(1) and (2)." **Shellabarger**, 317 S.W.3d at 84. Facts come into a summary judgment record only through the numbered-paragraphs-and-responses framework of Rule 74.04(c). **Id**.; *see also* **Lackey**, 487 S.W.3d at 61-62 & n.4. This means we look only to the SUMF that Railroad never amended, supplemented, or updated (except as to supporting certificates, and then largely ineffectually), and Plaintiffs' responses. Rule 74.04(c)'s numbered-paragraphs-and-responses framework aims to benefit trial and appellate courts in expediting disposition of cases and is not subject to waiver. **Lackey**, 487 S.W.3d at 62.

Railroad also argues that we cannot make evidentiary decisions de novo, citing **Weltmer**, 417 S.W.3d at 863, which to our surprise so suggests. A later Eastern District case goes even further – that on the admissibility of evidence to sustain or avoid summary judgment, "[w]e defer to the trial court's evidentiary rulings and will reverse only if the court clearly abused its discretion," *and even upon that finding*, we should "reverse only if the prejudice resulting from the improper admission or exclusion of evidence is outcome-determinative." **BV Capital, LLC v. Hughes**, 474 S.W.3d 592, 596 (Mo.App. 2015). We think these opinions misspeak because they cite cases not involving summary judgment, but evidentiary rulings during trials.[12]

---

[12] **BV Capital**, 474 S.W.3d at 596, cited an evidentiary ruling in a jury-tried case, **Bowolak v. Mercy East Communities**, 452 S.W.3d 688, 699 (Mo.App. 2014). **Weltmer**, 417 S.W.3d at 863, cited an evidentiary ruling in **Asset Acceptance**, 325 S.W.3d at 528, a bench-tried case. We rarely see evidentiary rulings expressed as to Rule 74.04(c) records; even more rarely are we asked to review such express evidentiary rulings.

Countless post-**ITT** cases describe appellate review of summary judgment as de novo or essentially so, including some 50 by our supreme court so far this decade. *See also* **L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.**, 75 S.W.3d 247 (Mo. banc 2002), where our supreme court made its own evidentiary determinations in the course of reversing summary judgment. *Id*. at 253 n.3. We reject Railroad's assertion that we cannot review evidentiary issues de novo.

## Conclusion

Railroad did not develop uncontroverted facts showing beyond genuine dispute that federal funds were spent on this crossing. Summary judgment based on federal preemption was improperly granted. We reverse and remand for further proceedings.[13]

DANIEL E. SCOTT, J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

[13] We need not reach the parties' dispute over Railroad's ability to obtain summary judgment when it bore a burden of proof. The core issue is easily summarized:

1. The difference between summary judgment and a directed verdict is said to be procedural; one preceding trial based on documentary evidence, the other occurring at trial based on proof admitted there, but with the inquiry essentially the same. *See* **Martin v. City of Washington**, 848 S.W.2d 487, 492 (Mo. banc 1993); **Am. Family Mut. Ins. Co. v. Lacy**, 825 S.W.2d 306, 313 n.6 (Mo.App. 1991).

2. With narrow exceptions not applicable here, "a directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be." **Brandt v. Pelican**, 856 S.W.2d 658, 664 (Mo. banc 1993). Instead, the party without the burden of proof "is entitled to try the case with no evidence at all and to rely solely upon the jury disbelieving the [opponent's] evidence." *Id*. at 664-65.