

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

ROBERT L. DAVIS, )
     Appellant, )
          )
v.           )   WD81341
          )
WALGREEN COMPANY, et al.,  )   FILED: April 23, 2019
     Respondents. )

### Appeal from the Circuit Court of Jackson County
### The Honorable Joel P. Fahnestock, Judge

### Before Division Two: Alok Ahuja, P.J., and Thomas H. Newton
### and Mark D. Pfeiffer, JJ.

Robert L. Davis appeals the circuit court's grant of summary judgment in favor of his former employer, Walgreen Co. ("Walgreens"), and two Walgreens' employees, Joey Jaramillo and Willow Cope[1] (collectively "the Defendants"). Davis sued the Defendants in the Circuit Court of Jackson County for employment discrimination and retaliation in violation of the Missouri Human Rights Act, chapter 213, RSMo. Davis contends the circuit court erred in granting summary judgment for the Defendants, because genuine issues of material fact exist concerning his discrimination and retaliation claims. Because we conclude that Davis failed to properly controvert the Defendants' showing that he was terminated for non-discriminatory reasons, we affirm.

---

[1]   Since the events giving rise to this lawsuit, Cope has gotten married and changed her last name. Because the parties refer to her as Willow Cope, we do the same in this opinion.

## Factual Background

For reasons explained in § I of our Analysis, below, we recite the facts as stated in the Defendants' statement of uncontroverted materials facts supporting their motion for summary judgment.

In late August 2013, Davis transferred to a Walgreens store located in Belton, where he was employed as an Assistant Store Manager. On September 12, 2013, an employee in the Belton store called the Walgreens compliance hotline and lodged a complaint against Davis. In her complaint, the employee alleged that Davis had sexually harassed her, was unprofessional toward her, and had acted in a physically threatening manner. Jaramillo, the District Loss Prevention Manager, was assigned to investigate the employee's complaint.

On September 17, 2013, Jaramillo interviewed the employee and took a written statement from her. In her written statement, the employee alleged that on September 5, 2013, Davis injected himself into a conversation she was having with another employee about not being strong enough to unload a shipment, and said: "I'd pay 50 cents for you, maybe a dollar on a good day." The employee was offended by Davis' comment. She also recounted that, whenever she and Davis would interact, he would look up and down her body in a sexually suggestive way while making inappropriate gestures like licking his lips. The employee also stated that on September 12, 2013, Davis paged her to the store office to discuss a scheduling issue, and physically prevented her from leaving the office even after she became visibly upset, and stated that she would be more comfortable discussing the issue with the store manager.

Jaramillo also interviewed Davis. He denied the employee's allegations and her account of their interaction on September 12, 2013. Davis denied preventing the employee from leaving the office, and asserted that it was the employee who was inappropriate in her demeanor and insubordinate.

Following his investigation, Jaramillo concluded that the employee's account of the relevant events was more credible than Davis' denials, because "Jaramillo believed that [the complaining employee] was straightforward and direct in her recitation regarding [Davis'] conduct, and that [Davis'] response regarding [the employee's] report was shifting, and his responses to Jaramillo's questions changed with probing." Jaramillo shared his findings with the Belton store manager, who concluded that the allegations made by the employee were credible, and that Davis could have and should have avoided the issue by having two individuals present for the conversation with the employee. The store manager decided that Davis should be issued a final written warning for his conduct on September 12, 2013.

On September 23, 2013, Davis requested a transfer to another Walgreens store. The request was granted, and Davis was transferred in early October to a store located in Blue Springs. On October 29, 2013, Davis met with the managers of the Belton and Blue Springs stores, and he was issued a final written warning for the allegations stemming from the hotline complaint by the Belton employee. The warning noted it was being issued for inappropriate, unprofessional, and unacceptable behavior, and that further discipline, up to and including termination, could result if performance standards were not met in the future.

In November 2013, Cope became the store manager in Blue Springs. In late November, Cope received a complaint from a pharmacy technician at the Blue Springs store that Davis made an unprofessional comment to her. Davis allegedly told the pharmacy technician that she "should take a Vicodin and get over it" after she told Davis she was in pain.

In the course of asking other employees about the pharmacy technician's complaint, Cope spoke with a shift floor lead at the Blue Springs store. The shift floor lead reported that Davis forced him to work on December 1, 2013, so Davis could attend a professional football game, and had berated the shift floor lead for

3

his handling of certain perishable items. Cope referred both complaints to Jaramillo for investigation pursuant to Walgreens regular practice.

Jaramillo interviewed the two complaining employees. On December 11, 2013, Jaramillo interviewed Davis regarding the complaints by the Blue Springs employees. Davis denied the allegations. At the end of the interview, Davis was placed on suspension pending further review and consideration of the matter.

Following the interview with Davis, Jaramillo interviewed the assistant manager who made the schedule for December 1, 2013. The assistant manager stated that the shift floor lead did not voluntarily cover Davis' December 1, 2013 shift.

At the conclusion of his investigation of the Blue Springs complaints, Jaramillo concluded that, more likely than not, Davis had engaged in the conduct that was reported by the pharmacy technician and the shift floor lead.

On December 11, 2013, Jaramillo reported his findings to an Employee Relations Specialist in Walgreens' human resource department. The Employee Relations Specialist recommended that Davis be terminated for his misconduct, and asked that Jaramillo share his findings and the Employee Relations Specialist's recommendation with the District Manager. The District Manager agreed that Davis should be terminated and approved the termination.

> [The District Manager] believed that termination was warranted because Plaintiff had engaged in three separate instances of conduct with subordinate employees that were not in keeping with Walgreen Co.'s expectations for its Assistant Store Managers, and that were inconsistent with Walgreen Co.'s policy regarding appropriate behavior for its employees. [The District Manager] further believed termination was warranted because two of the reports regarding Plaintiff's conduct occurred shortly after Plaintiff was issued a final written warning.

(Record citations omitted.) Neither Cope nor Jaramillo made the decision to terminate Davis; instead, "[t]he decision to terminate [Davis'] employment was

4

recommended by [the] Employee Relations Specialist . . ., and approved by [the] District Manager . . . ."

Davis' employment with Walgreens was terminated on December 12, 2013. He filed a complaint with the Missouri Human Rights Commission, alleging age, disability, and race discrimination in employment, and retaliation for his complaints of discrimination, all in violation of the Missouri Human Rights Act. After receiving a right to sue letter, Davis filed his petition against Defendants in the Circuit Court of Jackson County. Defendants moved for summary judgment. The circuit court granted the motion and entered judgment for the Defendants.

Davis appeals.

## Standard of Review

> This Court reviews a grant of summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Strake v. Robinwood W. Cmty. Improvement Dist.*, 473 S.W.3d 642, 644 (Mo. banc 2015).

*Gall v. Steele*, 547 S.W.3d 564, 567 (Mo. 2018).

> A defending party can demonstrate entitlement to summary judgment by showing: (1) facts negating any of the claimant's necessary elements; (2) the claimant, after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute of the existence of facts required to support the defending party's properly pleaded affirmative defense.

*Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 826 (Mo. 2014) (citing *ITT Commercial*, 854 S.W.2d at 381).

## Analysis

Davis argues that the circuit court erred by entering summary judgment for Walgreens, because genuine issues of material fact exist concerning his claims of

employment discrimination based on race, age, and disability, and concerning his claim of unlawful retaliation. To support his arguments, Davis relies on facts and evidentiary materials which he did not cite to the circuit court in his response to the statement of uncontroverted material facts supporting the Defendants' summary-judgment motion. We first address the legal consequences which flow from the manner in which Davis responded to Walgreens' summary-judgment motion. We then explain why the circuit court correctly granted summary judgment in light of the undisputed facts established by the parties' motion practice.

## I.

Davis' arguments – which rely on evidentiary materials he did not cite to the circuit court – fundamentally misunderstand the nature of summary-judgment practice.

"The language of [Supreme Court] Rule 74.04 establishes the boundaries of Missouri's summary judgment practice." *ITT*, 854 S.W.2d at 380. Rule 74.04 requires a party moving for summary judgment to include with their motion a statement of the purportedly undisputed facts which establish the moving party's right to judgment as a matter of law. Rule 74.04(c)(1) provides that

> A statement of uncontroverted material facts shall be attached to [every] motion [for summary judgment]. The statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts. . . .
>
> Attached to the statement shall be a copy of all discovery, exhibits or affidavits on which the motion relies.

The Rule also places specific obligations on parties *responding* to a motion for summary judgment:

> Rule 74.04(c)(2) requires a non-movant responding to a summary judgment motion to "set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements." The rule also requires the non-movant

6

to support each denial "with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). These requirements are mandatory. A response that does not comply with Rule 74.04(c)(2)'s requirements "with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph." Rule 74.04(c)(2).

*Jordan v. Peet*, 409 S.W.3d 553, 558 (Mo. App. W.D. 2013) (citation omitted).

As the Southern District has explained:

- Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework.

- Courts determine and review summary judgment *based on that Rule 74.04(c) record, not* the whole trial court record.

- Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.*

- To come full circle, "summary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone*."

*Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016) (footnotes omitted).

Generally, neither the trial court, nor this Court, can be expected to pore over the exhibits submitted in support of, or in opposition to, a summary judgment motion to determine whether summary judgment is appropriate, unless those evidentiary materials are cited in a statement of uncontroverted material facts, or in a response to such a statement.

Courts cannot sift through a voluminous record, separating fact from conclusion, admissions from disputes, the material from the immaterial, in an attempt to determine the basis for the motion without impermissibly acting as advocates. Rule 74.04(c) aims at benefiting trial and appellate courts to expedite the disposition of cases; noncompliance with these requirements is not a matter subject to waiver by a party.

7

*Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 62 (Mo. App. S.D. 2016) (citations and internal quotation marks omitted); *see also Pemiscot County Port Auth. v. Rail Switching Services, Inc.*, 523 S.W.3d 530, 532–34 (Mo. App. S.D. 2017); *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 834, 836 (Mo. App. S.D. 2016) (refusing to consider appellant's citation to summary judgment exhibits "completely untethered from any particular numbered paragraph material fact in the summary judgment record"; holding instead that appellate review requires the Court to "[c]ompar[e] the movant's specifically referenced evidence in a particular numbered paragraph material fact to the specifically referenced evidence in the non-movant's denial of that particular material fact . . .").

In this case, Defendants' motion for summary judgment contained sixty-three separate numbered paragraphs, each of which identified the "material fact[s] as to which [the Defendants] claim[ed] there [was] no genuine issue." As required by Rule 74.04(c)(1), each of those numbered paragraphs made "specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts," and the cited evidentiary materials were attached to the statement.

Davis' response to the Defendants' statement of uncontroverted material facts failed to properly controvert <u>any</u> of the sixty-three numbered paragraphs contained in the Defendants' motion.

Davis expressly admitted twenty-seven of the Defendants' uncontroverted factual statements.

As to four of Defendants' uncontroverted factual statements, Davis purported to deny them, but cited only to his petition to support his denials. Davis' reliance on his pleading to controvert Defendants' properly supported factual statements is explicitly prohibited by Rule 74.04(c)(2), which states that "*[a] denial may not rest upon the mere allegations or denials of the party's pleading.* Rather, the response

8

shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." (Emphasis added.)

> A party cannot rely on its own petition to provide the necessary evidentiary support for additional facts alleged in response to a summary judgment motion, as the purpose of summary judgment is to move the parties beyond the bare allegations in their pleadings. Accordingly, [the non-movant's] only recourse was to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute was, in fact, genuinely disputed.

*McNearney v. LTF Club Operations Co.*, 486 S.W.3d 396, 407 (Mo. App. E.D. 2016) (citations and internal quotation marks omitted). Therefore, to the extent Davis' "denials" were supported only by citations to his petition, those denials were ineffective, and the facts in the relevant paragraphs were deemed admitted for purposes of ruling on the Defendant's summary-judgment motion. *Jordan v. Peet*, 409 S.W.3d 553, 558 (Mo. App. W.D. 2013) (where non-movants "reasserted the allegations from their petition and claimed that those allegations created a disputed issue of fact[,]" the facts were deemed admitted).

With respect to twenty-eight of the Defendants' statements of uncontroverted material fact, Davis stated the following "denial":

> Disputed. Plaintiff can neither admit nor deny and therefore denies. The statement cannot be a material fact as it neither constitutes nor negates an element of Plaintiff's causes of action, rather it is asking to admit or deny whether Defendant has accurately quoted the affidavit, which the courts have previously called a "useless exercise," as it does not aid the court in identifying the material facts or determining the existence of any genuine issue as to those facts. *Custer v. Wal-Mart Stores E. I, L.P.*, 492 S.W.2d 212, 215-16 (Mo. App. [S.D.] 2016).

The *Custer* case, on which Davis relied to respond to almost half of the Defendants' factual statements, is plainly distinguishable. In *Custer*, the moving party's statements of uncontroverted material facts "merely recite[d] testimony

9

from depositions of potential witnesses in this case[,]" by quoting from or paraphrasing deposition transcripts. 492 S.W.3d at 214. The Court noted that, "[i]nstead of supporting material facts with reference to deposition testimony, . . . [the moving party] here set[ ] forth deposition testimony as purported material facts." *Id.* at 215. The Court observed that, in responding to the summary-judgment motion, the non-moving party would be "reduced to engaging in the meaningless activity of admitting or denying whether [the moving party] accurately quoted deposition testimony. This useless exercise does not aid the trial court or this court in identifying the material facts or determining the existence of any genuine issue as to those facts." *Id.* at 215–16 (footnote omitted).

In this case, the Defendants did not phrase their factual statements like the moving party in *Custer*, by merely alleging that particular witnesses had provided particular testimony in their depositions or affidavits. Instead, as *Custer* endorsed, the Defendants supported their statements of uncontroverted material facts with citations to relevant deposition testimony and affidavits; they did not assert that the existence of particular deposition or affidavit testimony was itself the material fact. *Custer* has no relevance here. Because Davis' objection to twenty-eight of the Defendants' statements of uncontroverted material fact is meritless, and because Davis offered no _other_ response to those twenty-eight paragraphs, the facts in those paragraphs are deemed admitted.

Finally, as to four paragraphs, Davis cited to his deposition testimony to dispute the Defendants' statements. In two cases, Davis disputed the paragraphs in which the Defendants described the complaints of misconduct made against Davis by other employees. Davis did not dispute that those employees had in fact made complaints against him, or that Walgreens had accurately described the employees' complaints; instead, he disputed that he had actually engaged in the misconduct alleged. But in the challenged paragraphs, Defendants merely asserted—as

10

undisputed facts—that other employees had made complaints against Davis; the Defendants themselves acknowledged, in later paragraphs, that Davis had disputed the underlying allegations. Thus, in these two cases, Davis' "denials" were ineffective, because they did not in fact address the substance of the Defendants' statements. Davis also disputed Defendants' claim that two specific supervisors met with him to deliver a "final written warning" on October 29, 2013. Davis' denial was not supported by the deposition testimony he cited, but only by the allegations of his petition (which was not an effective way to dispute the Defendants' properly supported factual statements, for reasons discussed above). Finally, Davis disputed Defendants' statement that he transferred to Walgreens' Blue Springs store "on or about October 10, 2013." To dispute this statement, Davis cited to the following exchange from his deposition:

> Q. And you said you believed you got to the Blue Springs store within the first two weeks of October 2013, maybe October 10th?
>
> A. Yes, somewhere around there.

Davis' agreement in his deposition that he transferred to the Blue Springs store "somewhere around" October 10, 2013, actually *supports* the Defendants' statement that he transferred there "on or about October 10, 2013"; his deposition testimony does not *contradict* the Defendants' factual statement. In any event, the specific date on which Davis transferred to the Blue Springs store is not material to the Defendants' entitlement to summary judgment.

Although Davis did not effectively controvert <u>any</u> of the Defendants' sixty-three statements of uncontroverted fact, he argues on appeal that genuine, disputed factual issues exist by citing excerpts of deposition testimony and other exhibits that were *attached* to the Defendants' statement of uncontroverted material facts, but which were not *cited* in the Defendants' fact statement, or in Davis' response. As we have explained above, however, the evidentiary materials attached to a

11

summary-judgment motion or opposition generally play only a "secondary role" in summary-judgment practice, "and then only as cited to support Rule 74.04(c) numbered paragraphs or responses." *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. S.D. 2016) (footnote omitted).

Davis argues that, under *Grattan v. Union Elec. Co.*, 151 S.W.3d 59 (Mo. 2004), the exhibits may be considered even though they were not cited in Defendants' fact statement, or in his response. In *Grattan*, however, even though the plaintiff failed to file a response to the defendant's statement of uncontroverted material facts, the plaintiff cited to an expert's deposition (with specific page numbers) in his memorandum opposing the defendant's motion for summary judgment. *Id.* at 62. The Supreme Court considered the deposition testimony cited in the plaintiff's memorandum because the defendant did not object to plaintiff's reliance on this deposition testimony in the circuit court, and because "the citation given [by the plaintiff] was sufficient to put the court and the parties on notice[.]" *Id.* In this case, by contrast, Davis did not *at any time* direct the circuit court to the portions of his deposition testimony or other exhibits on which he now relies – not in his response to the Defendants' fact statement, nor in his legal memorandum opposing the grant of summary judgment. *Grattan* is plainly distinguishable.

Davis also cites to *Street v. Harris*, 505 S.W.3d 414 (Mo. App. E.D. 2016), and to *Bank of America, N.A. v. Reynolds*, 348 S.W.3d 858 (Mo. App. W.D. 2011). In both *Street* and *Reynolds*, this Court referred to attachments to a movant's summary-judgment motion, which had not been cited to the circuit court, to find that genuine issues of material fact existed; in both cases, we relied on these uncited materials to reverse a grant of summary judgment. In both *Street* and *Reynolds*, however, the attachments to the movant's summary-judgment motion established fundamental defects in the movant's *prima facie* showing of a right to judgment. *Street* involved tort claims against the owners of a dog, for the dog's

attack on an independent contractor working at the defendants' home.  The defendants moved for summary judgment.  Their motion alleged the following uncontroverted fact:  that prior to the date of the attack on plaintiff, the dog "had never run at, charged, knocked anyone down, or injured anyone."  505 S.W.3d at 416.  The plaintiff did not timely respond to defendants' summary judgment motion.  "[T]wo of the exhibits attached to [the defendants'] motion for summary judgment," however, "offer[ed] differing accounts regarding whether the dog had ever knocked anyone down."  *Id.*  This Court recognized that, normally, the non-movant's failure to respond to a properly supported factual statement is deemed an admission of the facts alleged.  *Id.*  The Court found, however, that "this case presents a different issue; namely, the threshold issue of a movant's prima facie showing of entitlement to summary judgment."  *Id.*  The Court concluded that summary judgment was improvidently granted, because "the materials [the defendants] submitted in support of their motion for summary judgment are inconsistent, and therefore they could not make a prima facie showing that they were entitled to summary judgment."  *Id.*

*Reynolds* is similar.  *Reynolds* was an action by a bank to collect on a delinquent credit-card account.  The attachments to the bank's summary-judgment motion were not properly authenticated, and it was not even clear that two of the three attachments related to the defendant's credit-card account.  348 S.W.3d at 861.  Due to these fundamental defects in the bank's motion, this Court concluded that the bank had "not met its prima case for a breach of contract by" the defendant, and that "[t]he inconsistency in the Bank's own documents attached to the motion, in and of itself is sufficient to establish a genuine issue of material fact . . . ."  *Id.* at 862.

This case does not involve similar defects in the Defendants' *prima facie* showing.  Davis does not argue that Defendants failed to support their summary-

13

judgment motion with properly authenticated evidentiary materials, or that those evidentiary materials are otherwise incompetent. In addition, Davis' citation to previously uncited portions of the exhibits does not establish an *inconsistency* as to any of the facts alleged by the Defendants; instead, Davis seeks to rely on these uncited materials to establish *additional facts*, which Davis contends create a genuine factual issue for trial. Davis now contends that the summary judgment record shows that the Defendants failed to follow their own policies or procedures in disciplining him; that other similarly situated employees who were not part of a protected class were disciplined less harshly; that Cope harbored discriminatory animus against Davis due to his age and disability; and that the relevant managers were aware of, and acted in retaliation against, Davis' protected activity.[2] Davis' arguments on appeal do not argue that the Defendants failed to properly substantiate the facts identified in their statement of uncontroverted material facts; instead, he argues that *additional facts* would allow him to avoid the legal effect of the facts established by the Defendants. Under Rule 74.04(c)(1) and (2), however, Davis was required to identify these additional facts (with supporting evidence) in the circuit court in his response to the Defendants' summary-judgment motion; he was not entitled to assert these additional facts for the first time on appeal.

## II.

Because Davis did not effectively controvert any of the Defendants' statements of uncontroverted material facts, the circuit court was required to rule the Defendants' summary judgment motion on the basis of the following facts.

---

[2] Davis made certain of these allegations in the circuit court, in his memorandum opposing the Defendants' motion for summary judgment. In the circuit court, however, Davis supported his claims only with citations to his petition, _not_ with citation to any competent evidentiary materials. As we have explained above, Davis could not defeat the Defendants' summary-judgment motion solely by citing the allegations of his petition.

14

While Davis was working at Walgreens' Belton store, a female Walgreens employee made a complaint to Walgreens' compliance hotline that Davis had sexually harassed her, and acted in an unprofessional and physically threatening manner towards her. District Loss Prevention Manager Joey Jaramillo investigated the complaint by interviewing the complaining employee and taking a written statement from her, in which she described Davis' conduct and statements which made her feel uncomfortable and threatened. Jaramillo also spoke to Davis. Davis denied the employee's claims, but made no claim that the employee's complaint was motivated by discriminatory animus.

After concluding his investigation, Jaramillo concluded that the complainant's account was more credible than Davis'. Jaramillo made this credibility determination based on non-discriminatory considerations. Jaramillo shared his findings with the Belton Store Manager. The Store Manager likewise concluded – for non-discriminatory reasons – that the female employee's complaints were credible, and that Davis should be given a final written warning for his actions.

Davis then transferred from Belton to a Walgreens store in Blue Springs. In late November 2013, Blue Springs Store Manager Willow Cope received a complaint from a pharmacy technician that Davis had made unprofessional and dismissive comments to her concerning pain she was experiencing. Cope spoke to a shift floor lead, who confirmed the pharmacy technician's account. The shift floor lead also reported that Davis had yelled at him over an issue concerning the proper stocking of perishable items, and had pressured the shift floor lead to work for Davis so that Davis could attend a Kansas City Chiefs football game.

Cope referred both complaints to Jaramillo for investigation, pursuant to regular Walgreens practice. Jaramillo interviewed the complaining employees, and also spoke to an Assistant Manager who confirmed parts of the shift floor lead's

15

complaint concerning the scheduling issue. Jaramillo also spoke to Davis, who denied the allegations made by both complainants. "At the conclusion of his investigation, Jaramillo concluded that, more likely than not, Plaintiff had engaged in the conduct that was reported by" both Blue Springs employees.

Jaramillo reported the results of his second investigation to a Walgreens Employee Relations Specialist. The Employee Relations Specialist recommended that Davis be terminated. The District Manager agreed with this recommendation. The termination decision was based on the fact that Davis had violated Walgreens' expectations and policies in his dealings with three separate subordinate employees, with two of the interactions occurring after Davis had received a final written warning for such conduct.

Under the interpretation applied to the Missouri Human Rights Act at the time of Davis' termination, to establish a claim of employment discrimination an employee was required to establish that his or her membership in a protected class was a contributing factor in the employer's decision to take adverse action against the employee. *See, e.g., Hill v. Ford Motor Co.*, 277 S.W.3d 659, 665 (Mo. 2009); *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. 2007).[3] Davis argues there is a genuine issue of material fact as to whether his age, disability, or race was a contributing factor in Walgreens' decision to subject him to discipline and, ultimately, to termination. As described above, however, the facts established by the summary judgment record demonstrate that Walgreens terminated Davis for non-discriminatory reasons having nothing to do with his membership in a protected class. Indeed, Davis' age, his race, and his health status were not

---

[3]     The General Assembly abrogated the "contributing factor" causation standard in 2017. *See* § 213.101.4, RSMo Cum. Supp. 2018. This amendment does not apply retroactively to Davis' claims, which arise out of his discharge in 2013. *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 795 (Mo. App. W.D. 2018).

16

referenced *in any fashion* in Defendants' statement of uncontroverted material facts, or in Davis' response to that statement.

The summary-judgment record in this case literally contains <u>no</u> facts which would support Davis' claim that a protected characteristic was a contributing factor in any of Walgreens' actions against him. To the contrary, the uncontroverted facts show that Davis was terminated because he engaged in three separate instances of misconduct towards subordinate employees that were not in keeping with Walgreens' expectations for its Assistant Store Managers, and that violated Walgreens' policies governing employee conduct. In these circumstances, the circuit court correctly granted the Defendants' motion for summary judgment. *See, e.g.,* *Shore v. Children's Mercy Hosp.*, 477 S.W.3d 727, 735 (Mo. App. W.D. 2015) ("Because [the employee] failed to establish that a genuine issue of fact exists as to whether his race (Caucasian) was a contributing factor to any adverse employment action taken against him, the trial court properly granted summary judgment.").

The Defendants' fact statement notes that Davis denied all of the misconduct allegations against him. Davis argues that, because the Defendants' motion acknowledged that he denied the misconduct allegations, this necessarily created a genuine issue of fact as to whether his membership in a protected class was a contributing factor in Walgreens' adverse actions. However, the summary-judgment record shows only that multiple employees made misconduct complaints against Davis (without any suggestion that those complaint were motivated by discriminatory animus); that Davis denied those misconduct allegations (without ever alleging that the complaints were discriminatory); and that Walgreens made the decision (based on non-discriminatory considerations) that the allegations of misconduct were credible, and justified Davis' termination. Employees are frequently discharged based on allegations of misconduct which they deny. The mere fact that an employer chooses to credit an allegation of misconduct against an

17

employee, and to discredit the employee's denial of that misconduct, does not establish a triable claim of employment discrimination, without *some* evidence to suggest that a protected characteristic was a contributing factor in the decision to take adverse action. Stated another way: even if a jury were to conclude that Walgreens was mistaken in believing the allegations of misconduct against Davis and discrediting his denials, that fact alone would not support an inference that Davis' age, disability, or race was a contributing factor in Walgreens' decision to terminate him. As we have explained at length above, in his response to the Defendants' summary judgment motion Davis did not come forward with *any* evidence to suggest that discriminatory animus played a contributing role in the decision to terminate him. The circuit court did not err in granting summary judgment to the Defendants on Davis' discrimination claims.

Davis separately argues that the circuit court erred in granting summary judgment to Walgreen supervisors Cope and Jaramillo, because—Davis contends—a genuine issue exists as to whether they directly oversaw and were actively involved in the decision to terminate him. At the time of Davis' termination, an "employer" was defined to include "any person employing six or more persons within the state, and any person directly acting in the interest of an employer . . . ." § 213.010(7), RSMo 2016.[4] This definition was interpreted to include individuals who directly oversaw or were actively involved in the discriminatory conduct. *See, e.g., Diaz v.*

---

[4] The legislature amended this definition in 2017. Presently, an "employer" is defined as:

> a person engaged in an industry affecting commerce who has six or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and shall include the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state but does not include corporations and associations owned or operated by religious or sectarian organizations.

§ 213.010(8), RSMo Cum. Supp. 2018. The current definition expressly excludes from the definition of an "employer" "[a]n individual employed by an employer[.]" § 213.070(8)(c), RSMo Cum. Supp. 2018.

18

*Autozoners, LLC*, 484 S.W.3d 64, 78 (Mo. App. W.D. 2015); *Reed v. McDonald's Corp.*, 363 S.W.3d 134, 139 (Mo. App. E.D. 2012).

As we have explained above, Davis failed to establish that a triable issue exists whether his age, race, or disability was a contributing factor in his termination. If there is no evidence that Davis' termination was discriminatory, there is no basis to hold Cope or Jaramillo liable, whatever their role in the termination decision.

Finally, Davis argues that there is a genuine issue of material fact as to whether he was terminated in retaliation for his complaints of age, disability, or race discrimination. The Missouri Human Rights Act provides that it is an unlawful discriminatory practice for an employer "[t]o retaliate . . . in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter[.]" § 213.070(2), RSMo 2016; *see also* § 213.070.1(2), RSMo Cum. Supp. 2018 (same).

As we have explained above, the uncontroverted facts identified by the Defendants establish that Davis was terminated due to complaints of subordinate employees regarding Davis' unprofessional and inappropriate interactions with them. After Jaramillo investigated the matter, Walgreens found the three complaints credible, and concluded that Davis' termination was warranted. In response to the Defendants' showing of non-discriminatory reasons for his termination, Davis presented no contrary facts or evidence of his own. Notably, the statements of fact submitted by the parties do not make *any* reference to protected activity by Davis, or to knowledge of that protected activity by the persons who made the decision to terminate Davis. In these circumstances, the circuit court had little choice but to grant summary judgment on Davis' retaliation claim.

19

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.