**RUSTCO PRODUCTS COMPANY,**
Respondent,

v.

**FOOD CORN, INC., Appellant.**

No. WD 51409.

Missouri Court of Appeals,
Western District.

May 14, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 1996.

Application to Transfer Denied
Aug. 20, 1996.

918

G. Spencer Miller, Daniel Robert DeFoe, Kansas City, John Brand Eskew, Blue Springs, for Appellant.

Earl Wayne Taff, Kansas City, for Respondent.

Before FENNER, C.J., P.J., and SPINDEN and ELLIS, JJ.

FENNER, Chief Judge.

Food Corn, Inc. ("Food Corn"), appeals the order of the trial court denying its application for change of judge and granting the summary judgment motions of Rustco Products Company ("Rustco") on its petition for account and Food Corn's counterclaims. Appellant claims the trial court erred in denying its application for change of judge as untimely and in granting the summary judgment motions because genuine issues of material fact exist as to each of Food Corn's counterclaims and the petition on account.

The record reveals that Rustco filed a petition on account in the associate division of the Circuit Court of Lafayette County on October 17, 1986. Food Corn filed its answer on November 7, 1986, which included four counterclaims seeking damages in excess of the jurisdiction of the associate circuit court, therefore, the entire case was transferred by the associate circuit judge to the presiding judge of the circuit for assignment.

Rustco's petition on account sought payment for three shipments of 76 degree white coconut oil sold and delivered to Food Corn in 1985, amounting to a principal balance on account of $2,990.52. The charges became delinquent in April 1985, with Rustco seeking interest that accrued thereafter. In its answer, Food Corn asserted as an affirmative defense that the product provided by Rustco was unfit for human consumption and that there was, therefore, a failure of consideration, breach of express warranty, and breach of implied warranty of fitness. In its counterclaims, Food Corn sought damages due to business loss and destruction of inventory arising from Rustco's alleged negligence in failing to provide pure white coconut oil, in failing to provide product fit for the production of Food Corn's product, in failing to provide oil that conformed to Rustco's representations of quality, and in failing to provide oil to Food Corn that was fit for usual and ordinary purposes in the production of nacho chips. All four of Food Corn's counterclaims rely on the premise that the oil provided by Rustco was impure, adulterated, or contaminated in some manner.

In July 1990, after many discovery disputes between the parties, counsel for both parties appeared before Judge Robert Ravenhill for a hearing on a motion to compel and motion to dismiss for want of prosecution or, in the alternative, for a trial setting. According to the circuit court docket sheet for this case, the entry dated July 23, 1990, states that the matter was set for jury trial on March 4, 1991. Judge Ravenhill was the only circuit judge for the 15th Judicial Circuit, of which Lafayette County is a part.

Also, as part of the July 23, 1990 ruling on the motions, Food Corn's discovery objections were overruled. As a result, Food Corn was given 60 days to identify an expert witness, as it had not done so in support of its claims prior to this time. Food Corn failed to comply with this order, resulting in a motion for sanctions from Rustco. Finally, on November 19, 1990, Food Corn filed supplemental responses to Rustco's interrogatories naming John Hall of Medallion Laboratories as an expert witness and stating:

Although a contamination or [sic] foreign materials in the oil is suspected, no completely verified scientific explanation or test result has indicated what specific material or materials caused the contamination. As part of [Food Corn's] preparation of the case, tests and investigation is [sic] still ongoing as to the specific contaminates and materials.

As to Food Corn's claim that the oil was shipped in used or reconditioned drums that caused the oil to be contaminated, Food Corn went on to state in its supplemental responses that this belief was based "simply on supposition" and that further investigation was necessary to determine whether contaminated drums were used.

Rustco filed a motion for summary judgment on defendant's counterclaim in February 1991, yet never fully argued the motion and discovery continued. On September 30, 1991, a motion to prohibit Food Corn from identifying additional experts was taken up and sustained by the court. Thereafter, on October 19, 1991, Rustco deposed Food Corn's only disclosed expert, John Hall. Mr. Hall stated that he had tested corn chips purportedly fried in the Rustco oil and a sample of the oil. Based on his testing, Hall admitted he could not state to a reasonable degree of scientific certainty that appellant's corn chips were fried in contaminated oil or that the oil used to fry the chips was oil that had previously been used. The tests he performed on the oil yielded results within the acceptable range for pure coconut oil and showed no evidence consistent with the presence of animal fat in the oil.

On October 16, 1992, Rustco filed the motion for summary judgment as to Food Corn's counterclaims that this appeal is based upon. The basis for this motion was that Food Corn, after six years of litigation, had failed to come forth with evidence which would make a submissible case that the oil supplied by Rustco was adulterated or unfit for appellant's use. Food Corn responded to

Rustco's motion claiming, as best can be determined from Food Corn's somewhat convoluted and disjointed pleadings and briefs, that it had provided sufficient evidence to support its counterclaims in that Hall testified that the microscopic examination of sediment in the test samples contained charred plant material, potato starch, blue plastic, and metallic material as well as unidentified crystals that suggest that the oil *may* have been packed in used drums, and on the basis of smell and taste tests that the oil contained some tallow-like compounds.

On March 29, 1993, the motion for summary judgment was taken up and heard by Judge Ravenhill. The matter was taken under advisement and the opportunity to file additional suggestions on the motion was given. After the hearing on the summary judgment motion, appellant Food Corn made an oral motion for change of judge pursuant to Rule 51.05. Rustco waived the notice requirement, and the court heard oral arguments on the motion for change of judge and overruled the motion after the arguments were complete.[1]

On December 1, 1993, the trial court granted Rustco's motion for summary judgment on Food Corn's counterclaims. On June 16, 1994, Rustco filed a motion for summary judgment on its original petition on account, arguing that Food Corn's affirmative defenses that relied on the nature, character, and quality of the coconut oil have been litigated, and the doctrine of *res judicata* applied to bar further reliance on the unproven assertions as a result of the disposition of the summary judgment motion regarding Food Corn's counterclaims. Food Corn responded by claiming that Rustco did not satisfy its burden to prove the elements of its claim on summary judgment and failed to establish the non-viability of Food Corn's affirmative defenses. Additionally, Food Corn claims the December 1993 judgment entry on the summary judgment motion regarding Food

1. Food Corn filed its written application for change of judge pursuant to Rule 51.05 on March 31, 1993—two days after the judge ruled on the very same oral motion to which Rustco waived notice. Food Corn complains briefly about the circuit judge never ruling on the written application for change of judge, but any such complaints are without merit as the issue was conclusively determined based on the March 29th denial of the oral motion for change of judge.

Corn's counterclaims did not provide the *res judicata* effect argued by Rustco, as it did not constitute a final judgment for purposes of appeal or a former action between the parties for purposes of claim or issue preclusion.

The trial court granted Rustco's motion for summary judgment on the petition on account on June 26, 1995, and rendered judgment in the amount of $2,990.52 plus interest accrued in the amount of $4,844.61 in favor of Rustco and against Food Corn. This appeal was timely filed thereafter.

## I. *MOTION FOR CHANGE OF JUDGE*

■ Appellant Food Corn claims that the trial court erred in denying its application for change of judge, and thereafter entering the summary judgment orders of December 1, 1993, and June 26, 1995, in that the trial judge did not have discretion to deny the application because Food Corn complied with the requirements of Rule 51.05 in making its request.

■ The provisions of Rule 51.05 applicable to this case are as follows:

(a) A change of judge *shall* be ordered in any civil action upon the *timely* filing of a written application therefor by any party....;

(b) ... [i]f the trial judge is not designated at the time the answer is due ... the application must be filed no later than thirty days after the designation of the trial judge and notification to the parties or their attorneys....;

(e) Upon the presentation of a *timely* application for change of judge, the judge promptly shall sustain the application....

The disposition of appellant's argument on this point turns on the issue of the timeliness of the application for change of judge. A proper application is by definition timely; if the application is not timely, it need not be granted. *State ex rel. Burns v. Goeke*, 884 S.W.2d 60, 61 (Mo.App.1994).

In the case at bar, the initial trial date was set as part of a motion hearing on July 23, 1990. Both parties appeared for the motion hearing and were advised by Judge Ravenhill of a trial date of March 4, 1991. Judge Ravenhill was the only circuit judge for the 15th Judicial Circuit; therefore, in the absence of any indications that Judge Ravenhill exercised his prerogative to assign the case for trial by an associate circuit judge, it is clear that the parties knew that Judge Ravenhill would be the trial judge as of July 23, 1990.

Rule 51.05(b) mandates that any application for change of judge be filed within thirty days of the designation of the trial judge. A timely application for change of judge was, therefore, due by August 22, 1990. Appellant's application for change of judge made orally on March 29, 1993, falls slightly more than two and one-half years outside the window of timeliness.

Point denied.

## II. *SUMMARY JUDGMENT STANDARD OF REVIEW*

■ The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo*. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the trial court's granting of the summary judgment motion. *Id.*

■ When considering the appeal, the Court will review the record in the light most favorable to the party against whom judgment is sought. *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993). The movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted; any evidence in the record that presents a genuine issue as to the material facts defeats the movant's prima facie showing. *ITT Commercial Fin.*, 854 S.W.2d at 382. A "genuine issue" exists where the record contains competent material that evidences two plausible, but contradic-

tory, accounts of the essential facts. *Id.* A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.*

The non-movant is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993). If the movant requires an inference to establish his right to judgment as a matter of law and the evidence reasonably supports an inference other than that alleged by movant, a genuine dispute exists and the movant's prima facie showing fails. *ITT Commercial Fin.*, 854 S.W.2d at 382.

### III. *RUSTCO'S SUMMARY JUDGMENT MOTION ON FOOD CORN'S COUNTERCLAIMS*

Before addressing the merits of Rustco's motion for summary judgment on appellant's counterclaims, we must first address appellant's argument that the Rustco motion was procedurally insufficient. Appellant claims that the Rustco motion fails to comport with the particularity requirements of Rule 74.04(c),[2] pointing primarily to the fact that Food Corn made counterclaims based on four different grounds while the Rustco motion was based on the single point that Food Corn had produced no evidence that the damages it allegedly sustained were the result of any act or omission by plaintiff.

Appellant made four counterclaims as part of its answer to Rustco's petition: (1) negligence, predicated on the allegation that the Rustco oil was impure, adulterated, or contaminated; (2) the coconut oil was not fit for use in the production of corn chips because it was impure, adulterated, or contaminated; (3) Rustco violated an express representation that its coconut oil was of proper quality for use in the production of food products because the oil was impure, adulterated, or contaminated; and (4) the oil was not fit for

its usual and ordinary purpose because it was impure, adulterated, or contaminated. As an element of each claim, appellant was required to prove that the coconut oil was impure, adulterated, or contaminated. Rustco's motion centers on appellant's alleged inability to establish this key point.

Having reviewed the motion and accompanying suggestions in support,[3] it is our opinion that Rustco's motion was procedurally sufficient. Rustco's motion itself alleges that there is no issue of material fact "supporting the contention that any act, error or omission on the part of Rustco Products Company caused or contributed to cause the damages asserted by defendant" and incorporates the suggestions in support of the motion expanding on the point. Although the motion could have more clearly indicated the applicability of Rustco's argument to each counterclaim of Food Corn, the motion and accompanying suggestions clearly placed Food Corn on notice as to the issue on which Rustco was basing its motion for summary judgment, an issue key to each of Food Corn's claims. Appellant's argument that the Rustco motion was procedurally deficient is without merit.

Moving beyond appellant's procedural arguments to the merits of the motion, Rustco is a "defending party" as to Food Corn's counterclaims while Food Corn is considered the "claimant" as to its counterclaims. A summary judgment movant who is a "defending party" may establish a right to summary judgment by showing any one of the following: (1) facts that negate any one of the claimant's facts required to establish an element of claimant's claim; (2) the non-movant, after a reasonable period for discovery, has not and will not be able to produce evidence for the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts

---

**2.** Rule 74.04(c) was amended in 1994, with the current version requiring more particularity in the actual motion than the prior version and prescribing the form the motion is to take. The motion in question was filed when the prior version of Rule 74.04(c) was in effect.

**3.** Even if the motion itself was insufficient to meet the particularity requirement of Rule 74.04(c), we are allowed to consider suggestions in support of the motion incorporated into the motion by reference in assessing whether the particularity requirement is satisfied. *Ferguson v. Pony Express Courier Corp.*, 898 S.W.2d 128, 131 (Mo.App.1995).

necessary to support the movant's properly-pled affirmative defense. *ITT Commercial Fin.*, 854 S.W.2d at 381.

Only once the movant has satisfied one of the three grounds for establishing a right to judgment is the non-movant required to set forth specific facts showing there is a genuine issue of material fact. *Id.* (*citing* Rule 74.04). Once the movant makes a prima facie showing, an adverse party may not rest upon the mere allegations or denials contained in their pleadings to contradict facts alleged by the movant. *Id.*

It is clear that Rustco's motion seeks to establish that Food Corn, after a reasonable period for discovery, has not and will not be able to produce evidence for the trier of fact to find the existence of a key element to all four of Food Corn's counterclaims—that the coconut oil supplied by Rustco was impure, adulterated, or contaminated so as to cause Food Corn's alleged damages. The only expert identified to provide testimony to support Food Corn's contention is John Hall. The trial court has also issued an order preventing Food Corn from naming additional experts.

The deposition testimony of John Hall, appellant's own expert, was that he could not state within a reasonable degree of scientific certainty that the coconut oil was contaminated based on his laboratory tests. Hall testified that the oil purportedly supplied by Rustco did not contain any animal fats or fractionated product, that he could not say the test chips were fried in an oil containing animal fat, and that he could not even say that the chips he analyzed were fried in Rustco oil. Additional laboratory testing revealed that the iodine value, melting point, free fatty acid value, peroxide value, and solid fat index of the oil allegedly provided by Rustco were within the acceptable ranges for the grade of coconut oil Rustco was to supply Food Corn. Nothing in the laboratory analysis was indicative of there being any contaminant present in the coconut oil.

Because Hall is appellant's only expert who could testify as to the allegedly impure coconut oil, and his laboratory analysis found nothing indicative of the presence of animal fat or other contaminants, it is Rustco's claim in its summary judgment motion that Food Corn cannot establish the key element of contamination necessary to support each of its counterclaims. Food Corn counters by alleging that Hall also testified, based on his experience which included taste testing coconut oil and other products, that the Rustco oil had a smell and taste consistent with the presence of tallow and tallow products. Food Corn further points to a report prepared by Hall for appellant that states the results of the analysis "*could* be interpreted" to show that the particles in the sediment found upon microscopic examination were the result of the oil being packed in used, dirty drums or some other abuse. At best, this report is conjecture or speculation given its language. Mere speculation does not create a genuine issue of material fact; rather, the record must demonstrate factual questions that would permit a reasonable jury to return a verdict for the non-moving party. *Irwin v. Wal–Mart Stores, Inc.*, 813 S.W.2d 99, 102 (Mo.App.1991). As explained below, there are no such questions in this case.

The inconsistencies in Hall's testimony are analyzed as follows with regard to Rustco's motion for summary judgment. Because of the inherent inconsistency in the testimony, it could not be reasonably relied on to support appellant's claim that the oil was tainted. A party may not avoid summary judgment when its own witness gives inconsistent testimony and the party points to the inconsistencies in order to demonstrate a genuine issue of material fact. *ITT Commercial Fin.*, 854 S.W.2d at 388; *J.S. DeWeese Co. v. Hughes–Treitler Mfg. Corp.*, 881 S.W.2d 638, 646 (Mo.App.1994). While it is true that there is a genuine issue that precludes summary judgment where the record contains competent material that evidences two plausible, but contradictory conclusions, *Forry v. Dep't of Natural Resources*, 889 S.W.2d 838 (Mo.App.1994), competent material evidencing two plausible, but contradictory conclusions cannot come from the testimony of the same witness. Further, there is no other evidence to support appellant's claim that the oil was taint-

ed. Therefore, Rustco has shown that appellant will not be able to produce sufficient competent evidence to satisfy an element key to each of its four counterclaims. Food Corn could not provide additional evidence otherwise. As a result, Rustco would be entitled to summary judgment on Food Corn's four counterclaims.

In addition to the issue of contamination of the Rustco oil, Food Corn claims there are genuine issues of fact with regard to Rustco supplying contaminated oil to Food Corn, breach of duty by Rustco viz a vis Food Corn, and Food Corn's damages. However, if Food Corn cannot establish that the oil was contaminated, these issues are never reached. Food Corn cannot satisfy an element of each of its counterclaims. The trial court did not err in granting Rustco's motion for summary judgment as to Food Corn's four counterclaims.

## IV. *RUSTCO'S MOTION FOR SUMMARY JUDGMENT ON ITS PETITION ON ACCOUNT*

Again, we must first deal with Food Corn's challenge to the procedural sufficiency of the Rustco motion before addressing the merits of the issue. Food Corn claims the Rustco motion fails to meet the requirements of Rule 74.04(e) in that the exhibits attached to the affidavit of Terry Bessler, an account, agreement, credit and invoice, are not sworn to or certified copies of the document. This argument ignores the fact that on June 11, 1993, as part of Food Corn's response to requests for admissions prepared by Rustco, Food Corn specifically admitted the genuineness of the invoices attached to Bessler's affidavit. The requests for admission, along with the exhibits, were attached as Appendix A to the suggestions in support of Rustco's motion for summary judgment. Food Corn conclusively admitted the authenticity of the documents pursuant to Rule 59.01(c) and cannot now argue otherwise.

▮ Additionally, appellant contends that Rustco's motion is procedurally insufficient because the Bessler affidavit does not satisfy the requirement of personal knowledge found in Rule 74.04(e). The affidavit opens by stating that Bessler is the Director of Food Oils for Rustco and that he has personal knowledge of the facts set forth within the affidavit. Bessler's role as the director of food oils for Rustco is sufficient to establish that he would have knowledge of the agreement entered with Food Corn, the actual sale and delivery of the oil, the sale price and terms of the agreement, and the total amount of indebtedness of Food Corn to Rustco. *See generally Wilson v. St. Louis Area Council, Boy Scouts of Am.*, 845 S.W.2d 568, 573–74 (Mo.App.1992). Furthermore, Food Corn provided no evidence to contradict the Bessler affidavit. In fact, Food Corn admitted to the genuineness of the documents attached to the affidavit that further verify Bessler's statements. The Bessler affidavit satisfies the requirements of Rule 74.04(e).

▮ As to the merits of its motion, Rustco would be considered the "claimant" on its initial petition on account while Food Corn would be the "defending party" on this claim as it pertains to summary judgment analysis. Where a defending party raises an affirmative defense, as Food Corn has, the claimant's right to judgment depends just as much on the non-viability of the affirmative defense as it does on the viability of the claimant's claim. *ITT Commercial Fin.*, 854 S.W.2d at 381. A claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law. *Id.* The claimant may defeat an affirmative defense by establishing that any one of the facts necessary to support the defense is absent. *Id.*

Rustco must first establish the viability of its claim on its petition on account to be entitled to summary judgment. To establish a petition on account, Rustco must prove that Food Corn requested that Rustco furnish it goods, that the goods were furnished by Rustco, and that the charges were reasonable. *Taylor's Auto Parts v. Mayo*, 807 S.W.2d 215, 216 (Mo.App.1991). Food Corn admitted that it ordered 100% pure coconut oil from Rustco on March 5, March 7, and March 15, 1985. The affidavit of Bessler also sets forth facts demonstrating that the oil was sold and shipped to Food Corn, and Food Corn has not set forth specific facts to

dispute the shipment and receipt of the oil from Rustco to it or its representatives.[4] Additionally, the Bessler affidavit demonstrates that the price Rustco charged Food Corn for the oil was the prevailing market rate. Food Corn provides no evidence that the oil was sold at anything other than the reasonable, prevailing market price. We believe there is no doubt that Rustco established its petition on account so as to be entitled to summary judgment.

Rustco must also, however, establish that Food Corn's affirmative defenses fail as a matter of law. Food Corn pled the affirmative defenses of "breach of warranty by unfit product for human consumption, failure of consideration due to reliance on plaintiff's judgment [in selecting and delivering the allegedly tainted oil], breach of express warranty under U.C.C., breach of implied warranty of fitness under U.C.C., and failure to perform obligation to provide product fit for production of food products." Rustco claims that each affirmative defense alleged by Food Corn is premised on the fact that the Rustco oil was in some way impure, adulterated, or contaminated, a fact that was conclusively decided against Food Corn in Rustco's earlier motion for summary judgment on Food Corn's counterclaims, and, therefore, relitigation of the issue is barred by collateral estoppel and *res judicata*. Food Corn claims that Rustco cannot rely on the determination of the earlier summary judgment in making its argument for summary judgment on the petition on account.

We need not address the collateral estoppel and *res judicata* arguments of the parties. The absence of facts which doomed Food Corn's counterclaims and supported Rustco's motion for summary judgment on the counterclaims also supports Rustco's motion for summary judgment on the petition on account. There is still no sufficient evidence in the record to support Food Corn's claim that the oil was impure, adulterated, or contaminated in any way. Consequently,

Food Corn's affirmative defenses fail as a matter of law because this element is key to each of Food Corn's defenses. Rustco is entitled to summary judgment on its petition on account.

The orders of the trial court denying Food Corn's motion for change of judge and granting Rustco's motions for summary judgment as to Food Corn's counterclaims and Rustco's own petition on account are affirmed.

All concur.

---

4. Food Corn contends that the product shipped to it was not 100% pure coconut oil, and, therefore, denied requests for admission on the issue. As discussed earlier, Food Corn has been unable to prove its contention that the oil was contaminated. A party opposing a motion for summary judgment may not rely upon the mere allegations or denials of his pleadings, but must set forth, by affidavit or otherwise, specific facts showing genuine issues for trial. *ITT Commercial Fin.*, 854 S.W.2d at 381; *Tri–State Osteopathic Hosp. Ass'n v. Blakeley*, 848 S.W.2d 571, 573 (Mo.App.1993).