

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| HERNANDEZ CAMPBELL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD87399 |
| | ) | |
| ADECCO USA, INC., | ) | Opinion filed: October 7, 2025 |
| | ) | |
| Respondent. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
## THE HONORABLE COTTON WALKER, JUDGE

Before Division Two: Lisa White Hardwick, Presiding Judge,
Edward R. Ardini, Jr. , Judge and W. Douglas Thomson, Judge

Hernandez Campbell ("Campbell") appeals from the Cole County Circuit Court's ("trial court") grant of summary judgment in favor of Adecco USA, Inc. ("Adecco") on Campbell's claims under the Fair Credit Reporting Act ("FCRA"). Campbell brings four points on appeal. In Point I, he asserts the trial court erred in awarding summary judgment to Adecco "because a genuine issue of material fact[] exists, in that evidentiary issues are contested and subject to conflicting interpretations concerning whether [he] was provided with document 000106." Document 000106 is Adecco's FCRA disclosure form, entitled "Consumer Notification." In Point II, Campbell argues the trial court erred in awarding

summary judgment to Adecco "because it relied on the [vice-president of human relations' two] affidavits in that both affidavits are made without personal knowledge and are inadmissible hearsay."  In Point III, Campbell contends the trial court erred in awarding summary judgment to Adecco "because a genuine issue of material fact exists, in that [Adecco]'s alleged Consumer Notification (document 000106) is neither clear nor conspicuous as required by 15 U.S.C. § 1681b(b)(2)."  In Point IV, Campbell claims the trial court erred in dismissing his claim with prejudice "because it connotes a merit-based disposition in that any required dismissal would have been based on the absence of justiciability."  Finding no error, we affirm.

## Procedural and Factual Background[1]

[1] We review the parties' Statement of Uncontroverted Material Facts ("SUMF") and responses thereto for this section with our Point II holding in mind, see below.  In particular, those facts or responses citing either the First or Second Declaration, as the two affidavits of the Vice President of Human Relations are denominated.  Further, we take into consideration only those material facts deemed admitted, and disregard any noncompliant material facts.  Accordingly, this factual background consists solely of the properly supported uncontroverted material facts from the summary judgment record, which we view in the light most favorable to Campbell, who is also entitled to all reasonable inferences therefrom.  *See Montgomery v. Coreslab Structures (Mo.), Inc.*, 697 S.W.3d 766, 769 n.2 (Mo. App. W.D. 2024); *Green v. Fotoohighiam*, 606 S.W.3d 113, 116, 121 (Mo. banc 2020); *Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 810-11 (Mo. App. E.D. 2023).

We note the statement of facts within Campbell's appellate brief is simply not helpful for our purposes.  "Pursuant to Rule 84.04(c), the appellant's brief must contain 'a fair and concise statement of the facts relevant to the questions presented for determination without argument.'"  *Bracely-Mosley*, 662 S.W.3d at 810-11 (quoting *Fleddermann v. Casino One Corp.*, 579 S.W.3d 244, 247 (Mo. App. E.D. 2019)).  A statement of facts violates Rule 84.04(c) if it "fails to identify the material facts established by a motion for summary judgment, or properly denied by the opposing party's response[.]"  *Id.* at 811 (citing *Fleddermann*, 579 S.W.3d at 248).

But for the three opening sentences, Campbell's statement of facts fails to identify *any* material facts set forth by Adecco, and instead cites to exhibits, numbered

This FCRA claim arises from Campbell's application for employment with Adecco in September 2015. Pursuant to the FCRA, certain documents are to be provided and/or signed prior to credit checks, background checks, etc. being obtained from a consumer reporting agency with regard to an applicant. In a nutshell, Campbell's claims against Adecco stem from his assertion that such documents were either not provided to him or not provided in a manner compliant with the FCRA. He seeks damages therefore. Specifically, Campbell alleged that Adecco violated the FCRA by not properly disclosing that a consumer report would be obtained for employment purposes upon each prospective employee ("Disclosure Claim") and by not obtaining written authorization from such prospective employee to obtain a consumer report for employment purposes ("Authorization Claim"). Campbell asserts these claims on behalf of himself and putative classes of plaintiffs.

At the time he applied, Campbell was fifty-one years old. Campbell had completed "a lot" of job applications in his lifetime, including having completed job applications online more than five times. He knew how to use a computer and used internet websites. Additionally, Campbell only speaks English, which he can read, speak, and understand well, suffering from no learning disabilities or medical

---

paragraphs from his own additional SUMF, and some of Adecco's responses to said paragraphs. Campbell "bore the initial duty to recite, fairly and concisely, the relevant facts. [His] failure to do so is sufficient to merit dismissal." *Id.* at 811 (citing Rule 84.04(a)(3), (c); *Fleddermann*, 579 S.W.3d at 246, 248-49; and, *Alvis v. Morris*, 520 S.W.3d 509, 510, 512 (Mo. App. S.D. 2017)). Nevertheless, we may review non-compliant briefs *ex gratia*, and elect to do so here. *Id.*

or psychological conditions that impact his ability to read and understand English. He attended high school through the eleventh grade, and took additional classes while incarcerated to earn his "GED."

Campbell completed his job application and onboarding documents for Adecco on a computer. Said application and onboarding documents were written in English. Each of the onboarding documents provided to Campbell was listed on the computer; Campbell clicked on them one at a time to scroll through each document to either review and sign the document, or just review it if no signature was required. [2] Important for purposes of this appeal is document 000106 ("Consumer Notification"), which states:

> **APPLICANT,**
>
> **PLEASE DETACH THIS DOCUMENT FROM THE PACKET AND TAKE WITH YOU.**
>
> **CONSUMER NOTIFICATION**
>
> **Please be advised Adecco and/or its clients may obtain an investigative consumer report (i.e. background check, credit check, etc. ("Report")) from a consumer reporting agency pursuant to the Fair Credit Reporting Act as amended by the Consumer Reporting Reform Act of 1996. The Report is being obtained for the purpose of evaluating**

---

[2] While Campbell controverted this numbered paragraph, his response did not demonstrate a genuine issue as to said paragraph and thus was not a proper denial. *See* Rule 74.04(c)(2). On several occasions, Campbell attempted to deny statements of material fact, but nothing in his response and cited evidence supported the denial. "[I]f evidence is cited to support a denial, but that evidence does not expressly support a denial, we deem the statement admitted." *Fid. Real Est. Co. v. Norman*, 586 S.W.3d 873, 884-85 (Mo. App. W.D. 2019) (alteration in original) (citation omitted). Accordingly, this fact is deemed admitted. Additionally, Campbell also attempted to deny statements of material fact but the denials consist only of legal conclusions, which we disregard.

**you for employment, promotion, reassignment or retention as an employee.**

**This report may contain information bearing on your credit worthiness, credit standing, credit capacity, character, criminal background, general reputation, personal characteristics, or mode of living from public record sources or through personal interviews with your neighbors, friends or employees. You may also have a right to request additional disclosures regarding the nature and scope of the investigation. This information may also be shared with Adecco's clients in evaluating your eligibility for an assignment with such client.[3]**

This Consumer Notification was provided to Campbell online on September 28, 2015. Campbell does not remember the Consumer Notification. Nevertheless, Campbell understood each of the five sentences making up the body of the Consumer Notification. He also does not know of anyone who was confused by Adecco's Consumer Notification.

Additionally, a "Background Authorization and Release" form was provided to Campbell during his online application process, which states, in part:

**Background Investigations**

**I understand and agree that during the application process and, if employed, at any time during my employment with Adecco, Adecco and/or its Client may require that I undergo one or more background investigations including my driving record, credit history, criminal records, civil matters, previous employment, education verification as well as other past experiences through various sources such**

---

[3] Campbell controverted this numbered paragraph, specifically as to Adecco's labeling of the Consumer Notification as its "FCRA Disclosure" and to the assertion that the document was provided to Campbell during his online application process. However, Campbell did not deny that this numbered paragraph accurately restated the contents of the Consumer Notification; we therefore set forth the portion of said paragraph quoting the Consumer Notification.

**as federal, state and other agencies (including public and private sources) which maintain records concerning my past activities. I hereby voluntarily authorize and consent to such background investigations.**

**. . . .**

**I acknowledge receipt of a *Stand Alone* Consumer Notification which indicates that a background investigation report will be requested and used for the purpose of evaluating me for employment, promotion, reassignment or retention as an employee.**

**. . . .**

**I hereby authorize Adecco to transmit, electronically or otherwise any information necessary to perform background screening . . . .**

**I have read and understand the above.**

Campbell electronically signed the Background Authorization and Release form on September 28, 2015. Campbell does not remember whether he saw the Background Authorization and Release form during his application process. Campbell also electronically signed an E-Signature Agreement during his application process with Adecco on September 28, 2015, affirming that his electronic signature has the same value as a signature and that he had "fully read and understand[s] all information preceding [his] electronic signature in each location where [his] electronic signature appears." The consumer report regarding Campbell was ordered on November 27, 2015, and the background check was completed December 22, 2015. The consumer report on Campbell was accurate.

This is the second appeal before our court in this litigation between Campbell and Adecco regarding Adecco's alleged violations of the FCRA. In

6

*Campbell v. Adecco USA, Inc.*, 561 S.W.3d 116, 124 (Mo. App. W.D. 2018), we affirmed the dismissal of Campbell's FCRA Adverse Action claim for lack of standing, but reversed and remanded the dismissal of his FRCA Disclosure and Authorization claims. Following remand, in August, 2020, Campbell filed his second amended complaint in the trial court in which he re-asserted his Disclosure and Authorization claims on behalf of himself and putative classes of plaintiffs.

Over three years after the Second Amended Complaint was filed, on January 11, 2024, Adecco filed a motion for summary judgment on Campbell's claims, raising both standing and merits-based arguments. Campbell subsequently filed a response to Adecco's SUMF, his own SUMF, and suggestions in opposition to Adecco's motion for summary judgment. Within his response to Adecco's SUMF, Campbell controverted the paragraphs that relied on the Declaration ("First Declaration") of the VP of Human Resources Compliance for Adecco ("VP-HR"). Campbell claimed the First Declaration violated Rule 74.04(e), [4] arguing in relevant part that "the affidavit does not affirmatively show that [VP-HR] is competent to testify on the matters stated therein[.]"

Adecco thereafter filed a reply memorandum in support of its motion, a reply to Campbell's response to Adecco's SUMF, and a response to Campbell's additional SUMF. In response to Campbell's arguments concerning the First Declaration, Adecco argued VP-HR "is clearly competent to testify on the matters in her Declaration" due to her statement that she was personally acquainted with the facts

---

[4] All rule references are to Missouri Supreme Court Rules (2024).

stated therein, as well as her position as VP of Human Resources Compliance. Additionally, in all three of these additional filings, Adecco cited to a Second Declaration of VP-HR ("Second Declaration") to support its arguments or controvert paragraphs within Campbell's additional SUMF.[5]

On July 25, 2024, the trial court issued its judgment granting Adecco's motion for summary judgment as to all claims in Campbell's Second Amended Complaint. As to both the Disclosure Claim and the Authorization Claim, the court held there were no genuine issues as to any material fact and that Adecco was entitled to judgment as a matter of law. The court found both claims failed as a matter of law, as Adecco complied with the "disclosure" and "authorization" requirements set forth in the FCRA, respectively. In so finding, the trial court also found that VP-HR was "competent to testify regarding the matters set forth in her affidavit" and that the First Declaration otherwise complied with Rule 74.04(e). As such, several of the undisputed material facts cited by the court referenced the First Declaration, with some of said facts also referencing the Second Declaration in support. The trial court directed that judgment be entered in favor of Adecco and that the Second Amended Complaint be dismissed "in its entirety and with prejudice."

---

[5] We also note that Campbell at times references an Exhibit 12, his Declaration, as a supporting exhibit. However, the trial court disregarded Campbell's Declaration in its entirety, finding it "is merely an attempt by [Campbell] to contradict his own sworn deposition testimony to create a dispute of fact[.]" Campbell does not challenge this finding of the trial court here on appeal. We therefore do not consider any of Campbell's responses or material facts that rely solely on his Declaration.

Campbell appeals in four points, stated above. For clarity, we address Point II first, addressing the remaining points in order.

**Standard of Review**

"We review the grant of a motion for summary judgment *de novo* and need not defer to the trial court's determinations." *Shiffman v. Kan. City Royals Baseball Club, LLC*, 687 S.W.3d 443, 458 (Mo. App. W.D. 2024) (citing *J.H. by and through Meudt-Antele v. Jefferson City Pub. Sch. Dist.*, 661 S.W.3d 353, 357 (Mo. App. W.D. 2023)). However, "'[w]e will affirm the trial court's granting of summary judgment if it is correct as a matter of law on any grounds.'" *Id.* at 459 (quoting *Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 607 (Mo. App. W.D. 2022)).

"Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Green v. Fotoohighiam,* 606 S.W.3d 113, 115 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011), *abrogated on other grounds by Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778 (Mo. banc 2023)). A defending party, such as Adecco, is entitled to summary judgment if it demonstrates one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

9

*Shiffman*, 687 S.W.3d at 459 (quoting *Show-Me Inst.*, 645 S.W.3d at 607). "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Green*, 606 S.W.3d at 116 (quoting *Goerlitz*, 333 S.W.3d at 453). "[F]acts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* (quoting *Goerlitz*, 333 S.W.3d at 453). "'For purposes of Rule 74.04, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous.'" *Ludwig v. Mo. Soybean Merch. Council*, 691 S.W.3d 13, 20 (Mo. App. W.D. 2024) (quoting *ITT Com. Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993), *superseded on other grounds as stated in Green*, 606 S.W.3d at 116 n.5, 119 n.7).

## Point II[6]

---

[6] The parties dispute what the proper standard of review is for Point II. Campbell asserts our review is *de novo*. This position appears to have support in *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 164-65 (Mo. App. S.D. 2016). On the other hand, Adecco argues we are to review for an abuse of discretion "when reviewing whether the trial court properly admitted evidence at the summary judgment stage." While Adecco's cited cases for this proposition were disagreed with by *Jones*, we find this situation is arguably similar to a trial court's ruling on a motion to strike affidavits attached to a motion for summary judgment, which is reviewed for an abuse of discretion. *See Shiffman*, 687 S.W.3d at 454-55. Regardless, it is unnecessary to decide this question as we find no error by the trial court under either standard of review, as will be discussed herein.

Adecco referred to VP-HR's First Declaration as supportive evidence throughout its SUMF, and Campbell controverted many of Adecco's material facts by arguing that the First Declaration violated Rule 74.04(e). Similarly, Adecco referred to both VP-HR's First and Second Declarations in responding to Campbell's additional SUMF. In his second Point on Appeal, Campbell argues the trial court erred in awarding summary judgment to Adecco because the court relied on such Declarations, which Campbell argues "are made without personal knowledge and are inadmissible hearsay." We disagree.[7]

Rule 74.04(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "If an affidavit does not show a basis for personal knowledge, it is considered hearsay and is invalid." *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 515 (Mo. App. W.D. 2014) (citing *Perry v. Kelsey-Hayes Co.*, 728 S.W.2d 278, 280 (Mo. App. W.D. 1987)). Similarly, "[a]n affidavit which provides information based on outside documents, not personal knowledge, constitutes hearsay and alone is insufficient to support a motion for summary judgment." *LaBranche v. Cir. Ct. of Jackson Cnty.*, 703

---

[7] As stated in n.1, it was necessary for us to address this Point in setting forth the Procedural and Factual Background, as this Point directs our examination of the parties' SUMF and responses thereto in determining the properly supported uncontroverted material facts on summary judgment. Indeed, in order to set forth such facts, we had to incorporate the determination made in this Point II, that the Declarations could be properly relied upon by Adecco in supporting and responding to various facts within the SUMF.

S.W.3d 226, 235 (Mo. App. W.D. 2024) (citing *Gateway Metro Fed. Credit Union v. Jones*, 603 S.W.3d 315, 319-20, 323 (Mo. App. E.D. 2020)). "The circuit court is not allowed to rely on hearsay in granting a motion for summary judgment." *May & May Trucking, L.L.C.*, 429 S.W.3d at 515 (citing *Midwest Precision Casting Co. v. Microdyne, Inc.*, 965 S.W.2d 393, 396 (Mo. App. E.D. 1998)). "A party may 'bring defects in the affidavits . . . to the trial court's attention by motion to strike or objection.'" *Shiffman*, 687 S.W.3d at 454 (quoting *Cross v. Drury Inns, Inc.*, 32 S.W.3d 632, 636 (Mo. App. E.D. 2000); and, *Jungmeyer v. City of Eldon*, 472 S.W.3d 202, 205 (Mo. App. W.D. 2015)). Importantly,

> Affidavits need not declare that statements are made from personal knowledge to be valid under Rule 74.04. However, when such a declaration is omitted, the statements within the affidavit must indicate a basis for personal knowledge. The basis for personal knowledge may also be gleaned from the role of the affiant as stated in the affidavit.

*May & May Trucking, L.L.C.*, 429 S.W.3d at 515 (internal citations omitted). Stated differently, "'[w]hile an affidavit need not contain a particular "magic phrase" in order to establish that it is made on personal knowledge, the averments should still demonstrate that the affiant has personal knowledge of the matters contained in the affidavit.'" *Shiffman*, 687 S.W.3d at 456 (quoting *Bray v. Wells Fargo Home Mortg., Inc.*, 654 S.W.3d 732, 741 (Mo. App. E.D. 2022)).

With these principles in mind, we turn to Campbell's arguments in Point II. He asserts three specific arguments, namely that both "affidavits do not affirmatively show that [VP-HR] is competent to testify about the facts therein[,]" that VP-HR's "reliance on documents to form her statements serves as additional

evidence that she lacks personal knowledge[,]" and that "[t]he evidence of [VP-HR's] lack of personal knowledge is further complicated by her inability to authenticate the documents referenced in her affidavits and the statement of facts." We address these contentions as to each Declaration in turn.

## A. First Declaration

In her First Declaration, VP-HR stated she was making the Declaration "upon oath and affirmation of belief and *personal knowledge* that the following matters set forth [therein] are true and correct to the best of [her] knowledge[.]" (emphasis added). She stated she was "*personally acquainted* with the facts [therein] stated" and further stated "that the facts in this affidavit are true and correct." (emphasis added). VP-HR also stated her position as "the VP of Human Resources Compliance for Defendant Adecco" and that documents produced by Adecco "during discovery and referenced in its [SUMF] are true and correct copies of records kept in the regular and ordinary course of business at Adecco[.]" She went on to state when Campbell completed his job application and onboarding documents for Adecco; how the onboarding documents were provided to Campbell; which documents were the FCRA disclosure and authorization documents provided to Campbell by Adecco; when Campbell electronically signed the authorization and e-signature agreement documents; when the consumer report regarding Campbell was ordered; when the background check on Campbell was completed; and that the consumer report provided was a true and correct copy

of the consumer report for Campbell which was received by Adecco in December 2015.

Campbell's first argument in Point II is that VP-HR's Declarations "do not affirmatively show that she is competent to testify about the facts therein." Campbell specifically argues that the only basis for VP-HR's personal knowledge, as set forth in both affidavits, is her role as the VP of Human Resources Compliance for Adecco. He claims this "generic description" is "lacking" and "fails entirely to affirmatively show she is competent to testify to matters concerning [Campbell] and/or to documents that may be related to [his] Consumer Report." He argues further that the affidavits "fail to show her personal knowledge concerning policies, procedures, documents or of any other knowledge concerning events in 2015[,]" and emphasizes that VP-HR "does not testify that she is the custodian of records, she does not testify that she spoke with the custodian of records, and she does not testify that she communicated with [Adecco] or any other individual concerning the statements and alleged facts contained in her affidavit." He then analogizes VP-HR to the affiant in *May & May Trucking, L.L.C.*, whose affidavit "indicate[d] that she did not have any personal knowledge, but relied on other sources." 429 S.W.3d at 516. Such assertions are misguided.

In making such argument, Campbell overlooks VP-HR's clear statements in the First Declaration that she had "personal knowledge" of the truth and correctness of the matters set forth therein and was also "personally acquainted" with the facts stated therein. These statements *alone* are sufficient to satisfy Rule

14

74.04(e)'s requirements. Indeed, our court stated in *May & May Trucking, L.L.C.* that while "[a]ffidavits need not declare that statements are made from personal knowledge to be valid under Rule 74.04[,]" "when such a declaration is *omitted*, the statements within the affidavit must indicate a basis for personal knowledge." 429 S.W.3d at 515 (emphasis added) (citations omitted). In other words, though not required, one way in which affidavits can meet Rule 74.04 is by containing declarations of personal knowledge therein, which is clearly done here. *See also Scott v. Ranch Roy-L, Inc.*, 182 S.W.3d 627, 635 (Mo. App. E.D. 2005) (stating "it is perhaps the wisest course to have such an explicit statement in the affidavit"). Only when such explicit statements are *not* made must the affidavit otherwise indicate a basis for personal knowledge, which "may also be gleaned from the role of the affiant as stated in the affidavit." *May & May Trucking, L.L.C.*, 429 S.W.3d at 515 (citing *Rustco Prods. Co. v. Food Corn, Inc.*, 925 S.W.2d 917, 924 (Mo. App. W.D. 1996)).

Accordingly, Campbell's assertions, including his focus on VP-HR's role, are immaterial because they focus on matters that must be considered in the *absence* of declarations of personal knowledge. *Id.* This also distinguishes VP-HR from the affiant in *May & May Trucking, L.L.C.*, who did *not* include such a declaration within her affidavit and whose statements therein did *not* otherwise indicate she had any personal knowledge. *Id.* at 515-16; *see also Chesterfield Spine Ctr., LLC v. Best Buy Co.*, 617 S.W.3d 450, 459 (Mo. App. W.D. 2021) (finding affidavit at

15

issue distinguishable from the one in *May & May Trucking, L.L.C.* where affiant "stated that he is 'personally acquainted with the facts stated herein'").

For similar reasons, Campbell's second argument in Point II lacks merit. He contends that VP-HR's "reliance on documents to form her statements serves as additional evidence that she lacks personal knowledge." In support, he cites *Allen v. St. Luke's Hosp. of Kan. City*, 532 S.W.2d 505, 508 (Mo. App. 1975), particularly that portion of the opinion discussing the affidavit of a Dr. Benson. There, said affidavit had simply alleged:

> I, Dr. William F. Benson, being duly sworn, state and depose as follows:
>
> 1. That I was one of the attending physicians for Maxine B. Allen during her treatment at St. Luke's Hospital of Kansas City from May 18, 1971 to June 12, 1971.
>
> 2. That Maxine B. Allen, as indicated by her medical record, received two blood transfusions during her treatment at St. Luke's Hospital, both given on or before May 22, 1971.

*Id.* On appeal, the court found that Dr. Benson's "testimony concerning the transfusions was not on personal knowledge but merely a reference to medical records. An affidavit which relates information gained from other documents relates hearsay, not such facts as would be admissible in evidence, and is not sufficient to support a motion for summary judgment." *Id.* (citations omitted).

Campbell asserts that VP-HR's affidavits likewise "relate information from other documents; not [VP-HR's] personal knowledge." He also argues, however, that VP-HR's affidavits "are even further removed from personal knowledge than Dr. Benson, who had [] personal interactions with the subject of the report,

16

because [VP-HR] had no personal interactions with [Campbell], [nor] with anyone dealing with [Campbell], and nothing to do with the creation of documents or procurement of [Campbell]'s Consumer Report."

In making these assertions, Campbell again fails to acknowledge VP-HR's declarations of personal knowledge and even personal acquaintance with the facts stated within her First Declaration, a critical distinction from Dr. Benson's affidavit in *Allen*. Nowhere within the *Allen* affidavit was such a declaration made; instead, the affidavit clearly indicated it was based on medical records. 532 S.W.2d at 508. A similar indication is not seen within VP-HR's First Declaration. Accordingly, we disagree with Campbell that the First Declaration relates information from other documents, rather than from VP-HR's personal knowledge, because there is simply no evidence of same.

Campbell's third and final argument is that VP-HR's "lack of personal knowledge is further complicated by her inability to authenticate the documents referenced in her affidavits and the statement of facts." However, in making said argument Campbell is mistakenly applying foundation rules that apply to *business records* affidavits. This is evident in his citation to two cases that dealt expressly with whether certain documents met the statutory requirements for the business records hearsay exception. *See Weltmer v. Signature Health Servs. Inc.*, 417 S.W.3d 856, 862-63 (Mo. App. E.D. 2014); *Portfolio Recovery Assocs., LLC v. Schultz*, 449 S.W.3d 427, 431-34 (Mo. App. E.D. 2014). While VP-HR stated in the First Declaration that the records referenced therein "are true and correct copies

17

of records kept in the regular and ordinary course of business at Adecco," the First Declaration was clearly not created with the purpose to verify and admit such records. Indeed, VP-HR's testimony therein was focused mainly on Campbell's application process and explaining the onboarding documents provided during same, and the records referenced in the First Declaration were already attached as exhibits supporting Adecco's SUMF. *See Shiffman*, 687 S.W.3d at 458. Accordingly, Campbell's argument simply misses the mark.

The First Declaration is made on personal knowledge, sets forth such facts as would be admissible in evidence, and shows affirmatively that VP-HR is competent to testify to the matters stated therein. Rule 74.04(e). None of Campbell's arguments convince us otherwise.

## B. Second Declaration

With respect to VP-HR's Second Declaration, Campbell asserts on appeal that it "suffers the same deficiencies as the first affidavit; neither are based on [VP-HR's] personal knowledge." While we could simply reference our analysis of the First Declaration given Campbell asserts both Declarations suffer from the "same deficiencies," we note that Campbell did not move to strike or otherwise object to the Second Declaration at any point in the summary judgment record below. He thus raises his complaints as to the Second Declaration for the first time here on appeal. This he cannot do. "A party may 'bring defects in the affidavits or other supporting materials to the trial court's attention by motion to strike or objection.'" *Shiffman*, 687 S.W.3d at 454 (quoting *Cross*, 32 S.W.3d at 636; and, *Jungmeyer*,

18

472 S.W.3d at 205).  Failure to do so results in the failure to preserve such challenges to affidavits.  *See Gal v. Bishop*, 674 S.W.2d 680, 683-84 (Mo. App. E.D. 1984); *May & May Trucking, L.L.C.*, 429 S.W.3d at 514 n.2 (citing *Gal* for its proposition that an affidavit must be objected to in order to preserve challenges to it).  Indeed,

> An argument asserted on appeal but not included in the summary judgment record is not preserved for appellate review because "[t]his court's review of the grant of summary judgment is limited to those issues raised in the trial court, and this court will not review or convict a trial court of error on an issue that was not put before the trial court to decide."

*Montgomery v. Coreslab Structures (Mo.), Inc.*, 697 S.W.3d 766, 774 (Mo. App. W.D. 2024) (alteration in original) (citing *Old Navy, LLC v. S. Lakeview Plaza I, LLC*, 673 S.W.3d 122, 132 (Mo. App. E.D. 2023)).

As such, Campbell has waived his challenges to the Second Declaration. And, the First Declaration complied with Rule 74.04(e).  Accordingly, the trial court did not err by relying on said affidavits in granting summary judgment. Campbell's Point II is therefore denied.

**Point I**

In his first Point on Appeal, Campbell argues the trial court erred in awarding summary judgment to Adecco on his claim for violations of the FCRA "because a genuine issue of material fact[] exists, in that evidentiary issues are contested and subject to conflicting interpretations concerning whether [Campbell] was provided [the Consumer Notification]."  Campbell specifically argues that he was never given the Consumer Notification, as evidenced by the

19

Date/Time Stamp Report not identifying the Consumer Notification as a document provided to him. The Date/Time Stamp Report provided by Adecco summarily relates a wealth of information, including a list of computer folders, each bearing an identification number. In said Report, most, but not all of these computer folders are titled with not only an identification number, but also a number associated with the document(s) contained therein. As stated, document 000106 is the Consumer Notification. Thus, Campbell's claim derives from document 000106 (representing the Consumer Notification) not being included in the *identification number* of any *computer folder* listed in said Report.

This argument fails to demonstrate a genuine issue of material fact due to Campbell's non-compliance with Rule 74.04(c) in the summary judgment record below. "[A] relevant, cogent, and logical argument on appeal that a genuine issue exists as to a particular material fact must necessarily track the Rule 74.04 requirements in the same manner . . . as applicable to the trial court." *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 834 (Mo. App. S.D. 2016). In arguing there is a genuine dispute of material fact as to whether he was provided with the Consumer Notification, Campbell utilizes two of his numbered paragraph material facts in support: first, that Adecco presented the Date/Time Stamp Report to him, and second, that "[Adecco]'s [Date/Time Stamp Report] does not identify [the Consumer Notification] as a document given to [Campbell]."[8] These two facts

---

[8] Campbell references a third numbered material fact from his additional SUMF at the beginning of his analysis, to wit: "Appellant did not receive a disclosure that a Consumer Report was going to be procured that was clear and conspicuous or consisted

20

come from two separately numbered paragraphs in Campbell's additional SUMF. Each of these numbered paragraphs reference one exhibit in support, Exhibit 6 and an Exhibit 10, respectively. However, neither Exhibit 6 nor Exhibit 10 was attached to Campbell's additional SUMF. This is a violation of Rule 74.04(c).[9]

Rule 74.04(c)(2) provides that a non-movant's "response may also set forth additional material facts that remain in dispute, which *shall* be presented in consecutively numbered paragraphs *and supported in the manner prescribed by Rule 74.04(c)(1).*" (emphasis added); *see also Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 810 (Mo. App. E.D. 2023) ("If the non-movant files a statement of additional material facts, the process repeats itself, but with the non-movant stating material facts, supported in the same manner . . . ." (citing Rule 74.04(c)(2)-(3))). As set forth by Rule 74.04(c)(1), such support comes from "specific references to the pleadings, discovery, exhibits or affidavits." Critically, Rule 74.04(c)(1) requires that "[a]ttached to the [SUMF] *shall* be a copy of all

---

solely of the disclosure that a Consumer Report may be obtained for employment purposes." In support, this numbered paragraph material fact referred only to Campbell's Declaration. Not only is this fact impermissibly conclusory, but we note the trial court specifically found that Campbell's "statement in his Declaration opposing the motion for summary judgment that he did not receive the Consumer Notification . . . during his online application process with [Adecco] is not persuasive and directly contradicts his testimony and accordingly, the Court affords it no weight." In fact, the trial court disregarded Campbell's Declaration in its entirety, as explained *supra* n.5. Campbell does not challenge these findings of the trial court here on appeal. We therefore do not consider this particular numbered paragraph material fact.

[9] Two of these exhibits, Exhibit 6 and Exhibit 10, were deposited with our Court by Adecco, who confirmed said exhibits were not attached to Campbell's response but asserted nonetheless that the exhibits were presented to the trial court. Whether or not the exhibits were actually presented to the trial court is immaterial, as they were not attached to Campbell's response in violation of Rule 74.04(c)(1)-(2) and were not otherwise contained within our legal file.

discovery, *exhibits* or affidavits on which the motion relies." (emphasis added). Here, in failing to attach Exhibit 6 and Exhibit 10, Campbell did not support his factual assertions with exhibits as mandated by Rule 74.04(c)(1)-(2). Said another way, in summary judgment practice, a party cannot simply make a bald assertion and denominate it a "fact." Rather, the party must attach tangible support buttressing said assertion. This did not occur here, and without Exhibits 6 and 10 we are unable to ascertain whether there is support for the factual assertions referenced. Accordingly, said factual assertions must be disregarded, and therefore fail to demonstrate a genuine issue of material fact.

The remainder of Campbell's Point I addresses Adecco's counter-argument regarding the Date/Time Stamp Report. While we need not analyze this discussion,[10] doing so reveals that Campbell's focus on the Date/Time Stamp Report does not demonstrate a "genuine issue" as to whether he was provided with the Consumer Notification and thereby buttresses our decision. To reiterate, "'a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary, or frivolous.'" *Ludwig*, 691 S.W.3d at 20 (quoting *ITT Com. Fin. Corp.*, 854 S.W.2d at 382).

---

[10] Indeed, because Campbell did not properly support his factual assertions to argue a genuine issue of material fact, his argument that a genuine dispute of material fact exists necessarily fails *without* consideration of Adecco's response to said facts within its response to Campbell's additional SUMF. *Cf. U.S. Bank Trust, N.A. v. Pratte*, 700 S.W.3d 355, 361-62, 362 n.7 (Mo. App. W.D. 2024).

Here, in its response to Campbell's additional SUMF, Adecco admitted that the Date/Time Stamp Report does not reference the *number* "000106" in a computer folder identification number, but denied that the Consumer Notification was not accounted for therein. Rather, Adecco asserted that the Consumer Notification and the Background Authorization and Release are two forms bearing the same computer folder identification number, indicating that they were contained in a single folder. Adecco pointed out that the Date/Time Stamp Report shows the folder, which included both documents, was accessed by Campbell on "2015-09-28 13:14:43 CST" and thereby provided Campbell both the Consumer Notification and the Background Authorization and Release contained within said folder. And, Adecco referenced the Second Declaration of VP-HR attached to its response in support of these assertions, a document to which Campbell has failed to preserve any challenges. Campbell offered no subsequent response or argument against such contentions in the summary judgment record below. Accordingly, though the Date/Time Stamp Report does not specifically refer to the Consumer Notification, it need not, and the record demonstrates this does not create a "genuine issue" as to whether Campbell was provided with the Consumer Notification.[11]

---

[11] Campbell's argument in response to these assertions here on appeal is unpersuasive as it also fails to demonstrate any contradiction or conflict between the discussed materials. Further, the single material fact upon which he relies suffers from the same deficiency as above described in that it relies on an exhibit not attached to Campbell's additional SUMF.

Further underscoring this lack of a "genuine issue" is the fact that Campbell completely ignores the uncontroverted material fact that he electronically signed the Background Authorization and Release on September 28, 2015, which states therein, "**I acknowledge receipt of a *Stand Alone* Consumer Notification** . . . ." Campbell's arguments fail.

Point I is denied.

## Point III

In his third point on appeal, Campbell asserts the trial court erred in awarding summary judgment to Adecco on his claim for violations of the FCRA, "because a genuine issue of material fact exists, in that [Adecco]'s alleged Consumer Notification . . . is neither clear nor conspicuous as required by 15 U.S.C. § 1681b(b)(2)."

Under the FCRA,

[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).  Point III concerns only the "clear and conspicuous" requirement for a disclosure as provided in § 1681b(b)(2)(A)(i), which has been

24

"interpreted in the context of FCRA to mean a 'reasonably understandable form' that is 'readily noticeable to the consumer.'" *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151, 1153 (9th Cir. 2020) (quoting § 1681b(b)(2)(A)(i); and, *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176 (9th Cir. 2019)).

Campbell makes two specific arguments within his Point III, neither of which demonstrate a genuine issue of material fact. First, he claims that two different documents—numbers 000009 and 000116—identify Adecco's FCRA disclosure (Consumer Notification) as a document that must be signed. He goes on to assert that the Consumer Notification is neither signed nor capable of being signed, and concludes that "no court or reasonable person could ever find [Adecco]'s [Consumer Notification] to be clear and conspicuous when [Adecco]'s own documentation negate [sic] the identity of [Adecco]'s alleged disclosure form." As best we understand this, he claims that documents 000009 and 000116 suggest the Consumer Notification must be signed, but the Consumer Notification itself was not signed nor is there a place upon it to be signed; ergo it cannot be clear and conspicuous because it cannot be signed.

We need not get to the merits of this argument, however, as it suffers from the same factual deficiencies described in Point I. Indeed, every numbered material fact cited in support of this argument by Campbell comes from numbered paragraphs within Campbell's additional SUMF and references exhibits which are not attached to Campbell's additional SUMF. As explained in Point I, this violates

25

Rule 74.04(c)(1)-(2), meaning these relied upon factual assertions must be disregarded, regardless of Adecco's responses to them. Accordingly, it necessarily fails.

With respect to Campbell's second specific argument in support of Point III, he argues "[Adecco]'s [Consumer Notification] is so confusing it took over six years for [Adecco] to identify it as their disclosure." In so arguing, Campbell claims the Consumer Notification "was not always the document identified as [Adecco]'s FCRA disclosure[,]" and refers to Adecco's amended discovery responses over the course of the litigation. In particular, Campbell points out that Adecco originally identified *all* of the documents provided through discovery, "documents 000001-000176[,] as those used to obtain [his] written consent to procure a Consumer Report." Upon our review, we find absolutely no indication that this discovery response by Adecco was intended to represent that 176 documents constituted the required FCRA disclosure, but rather disclosed Adecco's entire file regarding the onboarding of Campbell. This is made clear by Adecco's subsequent discovery responses referenced by Campbell, which were more specific in identifying the Consumer Notification as the FCRA disclosure. The remainder of Campbell's assertions in support of this argument are immaterial, as they rely on material facts in Campbell's additional SUMF that must again be disregarded as they are not buttressed by supporting affidavits pursuant to Rule.

Finally, we note that noticeably absent from Campbell's Point III argument is *any* discussion of the actual content or language of the Consumer Notification.

Indeed, Campbell has failed to point to *anything* therein, or anywhere else in the record, that creates a genuine issue as to whether the Consumer Notification is "clear and conspicuous." Nor could he, as is evident from our review of the Consumer Notification set forth in the summary judgment record. Accordingly, Campbell has failed to demonstrate a genuine issue of material fact concerning whether the Consumer Notification was clear and conspicuous.

Point III is denied.

## Point IV

In his final point on appeal, Campbell contends that "[t]he trial court erred in dismissing [his] claim with prejudice because it connotes a merit-based disposition in that the required dismissal would have been based on the absence of justiciability." At the heart of Campbell's point is his claim that the trial court's grant of summary judgment for Adecco was based on a finding of lack of standing. If this were the case, Campbell would be correct that the trial court should have dismissed the petition for want of justiciability rather than granting summary judgment. As our court has recently explained,

> [R]egardless the nature of the motion raising the issue, if a trial court determines that a plaintiff lacks standing to pursue asserted claims, the required disposition is dismissal of the petition based on the absence of justiciability. Thus, "even if the standing argument is raised in a motion for summary judgment or other motion in which matters outside the pleadings are considered, the [trial] court must still enter dismissal as opposed to summary judgment." That is because summary judgment is "an inherently merits-based disposition," where "disposing of a case for lack of standing is not a disposition of the merits."

27

*Mathews v. FieldWorks, LLC*, 696 S.W.3d 382, 392 (Mo. App. W.D. 2024) (second alteration in original) (citing and quoting *Klenc v. John Beal, Inc.*, 484 S.W.3d 351, 354 (Mo. App. E.D. 2015)).

Here, Adecco raised *both* standing and merits-based arguments in its motion for summary judgment. In examining the trial court's judgment, however, it is clear that the trial court determined Campbell's claims failed on their *merits* rather than for a lack of standing. Indeed, concerning Campbell's Disclosure Claim, the trial court found Adecco "complied with the 'disclosure' requirement under the FCRA as set forth in 15 U.S.C. § 1681b(b)(2)(A)(i)" and therefore held Campbell's "FCRA Disclosure claim *fails as a matter of law . . . .*" (emphasis added). Similarly, the court determined Adecco "complied with the 'authorization' requirement under the FCRA as set forth in 15 U.S.C. § 1681b(b)(2)(A)(ii)" and accordingly held Campbell's "FCRA Authorization claim *fails as a matter of law . . . .*" (emphasis added).

Accordingly, the trial court's judgment was plainly merits-based, meaning a grant of summary judgment was the proper disposition. *See Mathews*, 696 S.W.3d at 392-93 (stating summary judgment is "an inherently merits-based disposition," (quoting *Klenc*, 484 S.W.3d at 354), as well as "a ruling that connotes a disposition on the merits"). Considering this proper disposition, and having otherwise denied Campbell's other points on appeal, there is no need for us to exercise our authority under Rule 84.14 to modify the judgment as to its disposition.

Point IV is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.